# STATE
### vs.
## LOUIS W. NORTHROP

Superior Court      Fairfield County      File #8322

Present:   Hon. JOHN A. CORNELL, Judge.

Lorin W. Willis,            Attorney for the Plaintiff.

Reich & Reich,           Attorneys for the Defendant.

### MEMORANDUM FILED MARCH 23, 1936.

CORNELL, J.   The information counts on **Supplement to Connecticut General Statutes, #1707C.**

This provides insofar as is material here, as follows:

"Any person who shall keep . . . . a slot machine which is **used** for the purpose of gaming or **designed** for the purpose of a lottery or gaming, or which is used or designed to discharge with or without merchandise any tokens which may be used for further operation of a slot machine or for exchange, or which is used or designed to display any symbol entitling any person **by reason of such display** to receive merchandise or money, shall be fined." . . . . etc.

The State claims that the accused violated this statute in two respects or in either of them, viz., (1) that the device

possessed by the accused was a slot machine, used or designed for the purpose of gaming and (2) it was a slot machine used or designed to display symbols entitling a person, by reason of such display, to receive merchandise or money.

Leaving aside for the moment, the question of whether the device in question was a "slot machine", it is apparent that no offense was committed in keeping it, within the meaning of the information unless it was "used or designed for the purpose of gaming."

The agreed statement of facts details the manner in which a player operates the device. When he has deposited a five cent piece ten balls are automatically made available for his play. Each of these as it is used falls into a cylinder whence it is propelled by a plunger having a spring with a fixed tension operated by the player into a field on an inclined plane which has fixed steel upright pins and holes placed at various points on its surface, which holes are large enough to trap and retain the marbles and each of which holes has a number painted above it. The score of the player is computed at the end of a play of the ten marbles by totaling the numbers above the holes in which the balls have lodged.

If a player makes a certain minimum score he receives a prize of the value of anywhere from 5c to $2.50, according to how high his score is. If his total does not reach the minimum fixed by the person in whose establishment the device is kept, he receives nothing.

This mere statement would obviously describe the play as one of gaming if the trapping of the balls within the various holes were a matter of chance, only. It is contended, however, that this is not a mere case of luck but one of skill, or, at least, that in obtaining a score, it is skill, rather than chance which predominates.

By the stipulation of counsel for State and accused the court is not permitted to reach its own conclusions as concerns this from use or observation of the use of the device but is confined to the agreed statement of facts.

All that appears on this phase of the matter from that source is that the balls are propelled on the inclined plane by the plunger operated by the player; that the ultimate destination of such balls depends upon the force with which

they are propelled and that some people with average natural ability, after practice on a particular machine acquire a degree of skill in the operation of same.

These statements fall short of saying that the game is wholly predominantly one of skill.

It moreover appears that if a ball is caused to enter certain holes or traps an electric switch is thereupon automatically actuated so that a new impulse of uniform force becomes applied to it which then reduces the ability of the player to forecast the ultimate destination of such ball. The language used in the statement of facts gives the impression that it is the aim of a player to cause a ball to take such a course as will cause it to be thus subjected to such new impulsion. Why this should be so appears from observation of the device, but since it is not stated among the facts which the court may permissibly consult will not be taken into account here.

However, it thus appears that only "a degree of skill" at the most is attainable toward controlling the course which a ball takes and that even the influence of that upon the ultimate destination of the ball is "reduced" if by either chance or design the ball comes into a position where the electric switch is excited into activity. That chance, rather than skill, under such circumstances is—or certainly is likely to be—the controlling element in determining the score which a player may attain, seems an unavoidable conclusion. At the very least, if it can be said that he hazards nothing himself, his hope of gaining and the value of what he may gain rests upon the unpredictable course which the ball may take in which even as a practised player he may have acquired a degree of control which is "reduced" if the ball enters an area which activates the switch. It hardly seems necessary to cite authority for the conclusion that this use of the device— which is that for which it was designed—for the purposes described is a use for the purpose of gaining, since it appears that when one places a nickel in the machine, he plays (1) to make a score sufficiently high to qualify for a prize, but may not succeed in so doing and (2) if he does succeed the degree of his success determines the value of what he may receive up to the limit offered by the keeper of the machine.

He is, therefore, playing against the keeper who, in turn expects that the quirks of chance are so much on his side

that after deducting the value of prizes offered by him there will still be sufficient profit to divide between him and the owner of the machine who places it in his store or other establishment. **Sparks vs. State (Ga.) 173 S. E. 216; Adams vs. Antonio (Tex.) 88 S. W. (2nd) 503; Commonwealth vs. Theatre Advertising Co. (Mass.) 190 N. E. 518; State vs. Mint, etc. Machine, 85 N. H. 22, 154 Atl. 224.**

In essence, a person playing the game here discussed is wagering his five cents against the lucky roll of the ball subject to such little or greater effect upon it as such skill as he may have acquired may have, for the purpose of gaining a greater stake. This is gaming and the use of the machine for that purpose is a use for the purpose of gaming. See **Sofas vs. McKee, 100 Conn. 541,** where in interpreting a different statute than here concerned the opinion states (p. 545):

"In that view, the word 'game' in #4805 when read in connection with #4804 would reasonably be deemed to refer to any subject which is specifically mentioned in #4804 as the possible subject of a wager.

In other words, that a game is any undertaken occurrence that may be a vehicle for gaming wagers. Such occurrence need not, itself, be illegal.

We hold that 'game' as used in #4805 includes 'any sport or amusement public or private'. It includes physical contests whether of man or beast, when practiced for the purpose of deciding wagers, or for the purpose of diversion, as well as games of hazard or skill by means of instruments or devices'. **27 Corpus Juris, p. 968, #2.**

The word 'game' in the #4805 refers, therefore, to any of the events mentioned in #4804 as the possible subjects of a wager. It is not necessary now to determine whether it has the wider meaning intimated in the Harbourne case". **Sofas vs. McKee 100 C. 541, 545.**

The conclusion that the instrumentality is one used for and designed to be used for gaming, does not, in itself, determine the guilt or innocence of the accused of the particular offense with which he stands charged.

He is not accused of keeping "a device used for gambling" as e.g., mentioned in **General Statutes Cum. Supp.** #1708c, but one of the particular instrumentalities described in **General Statutes, Cum. Supp.** #1709c, viz., a slot machine. A slot machine may be a gambling device but a gambling device is not necessarily a slot machine.

Is the instrumentality here a slot machine?

No statute in this State defines what a "slot machine" is. And that upon which the prosecution here is founded fails to say what kind of mechanism is intended by the use of that term. Counsel for neither side have referred the court to any authority which, notwithstanding the fact that there is a multitude of cases concerned with such machines distinguishes one from other devices used for gambling.

Most of the precedents are concerned with the question not whether the device is a slot machine, but whether it is a slot machine used or designed for gaming. A number of these are collected in a note in **38 A.L.R. p. 73** supplemented by another in **81 A.L.R., 177**, while a note in **60 A.L.R.** considers the status of slot machines as a game of chance or a device used in connection therewith.

Webster thus defines it, but only in its innocent conception: "A machine the operation of which is started by dropping a coin into a slot as for delivering small articles of merchandise, showing one's weight, etc." This is quoted as an authoritative definition in **Fey vs. Rossi Improvement Co. 23 Cal. App. 766, 139 Pac. 908, 909** as is, also, what is said on that subject in **State vs. Vasquez, 49 Fla. 126, 129, 38 So. 830.** The latter, as well as **Fey vs. Rossi Improvement Co., supra,** are palpably distinguishing between automatic vending machines and those which whether or not they deliver something of value in return for the inserted coin either offer the opportunity of gaining something in addition or some other lure to further play.

It may be that in this or some substantially similar sense, the term "slot machine" has attained a definite meaning in legal nomenclature. Even so, thus considered, however, the term does not appear to have acquired any necessarily illegal connotation.

The ingenious diversification of the functions of such in-

strumentalities forbids any attempt at classification. One distinguishing feature characterizes all of them, however, viz., the fact that they are brought into operation by the deposit of a coin in a slot or other similar receiving device.

Another feature commonly present is the automatic delivery of slugs with which to "play" the machine. In these two respects the device under discussion here, bears faithful analogy to certain types of "slot machines", for just as the balls or marbles are released for play by the deposit of a nickel in it, so are the slugs in other machines for its further operation.

But here the analogy stops. For in the ordinary device termed a "slot machine" the symbols, characters, or numerals shown or the slugs or other articles delivered are the result of automatic machine processes and largely dependent, if not always upon automatic rotating devices which must invariably deliver a certain number of slugs or other articles, or show specific symbols, numerals or character in a mechanically predetermined order of operation. In other words, the operator of such an instrumentality can have no influence, regardless of how he plays the machine upon what the result may be.

In the instant device the reverse is true, for there is nothing fixed or invariable either as to the result of a single propulsion of the ball or any order in which this may be done which is predetermined automatically, mechanically or otherwise. While the tension of the spring which operates the propelling plunger is uniform, its propelling force varies with the momentum which it gains according to the manner in which it is operated by human hand and the course which it then takes is dependent upon humanly incalculable factors. It is not a machine in any other sense than that the operation of the plunger sets in motion the ball.

In the absence of any statutory definition it must be assumed that the legislature used the term "slot machine" in its commonly accepted sense. If there be any other than that which conceives a slot machine as performing its functions mechanically and automatically, it is certainly not the commonly understood and generally accepted one. What has been said, supra, applies with equal force to the display of symbols. It may easily be conceded that a machine which upon operation shows only numerals or combinations of them

for the successful operation of which a prize is given to persons receiving the highest total or a total above a certain figure would be a "slot machine" within the intendment of the statute, if the play of the apparatus is dependent upon a deposit of a coin in it.

But as pointed out, supra, the numerals which account for the score are fixed in the device under discussion and as fixed and alone are unimportant. They attain their significance not as the result of a fixed mechanical function automatically operating, but as the result of a human factor operating with necessarily variable pressure, force and results.

It is the conclusion that though the the device is one designed for and used for the purpose of gaming it is not a "slot machine" within the meaning of the statute upon which the information is based and so is not the character of in-strumentality which the information charges the accused with keeping.

The judgment is "not guilty as charged".