[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION (MOTION TO STRIKE #130)
Defendants, Connecticut Practice Management and Griffin Hospital, move to strike the fifth and sixth counts of the Revised Complaint claiming the conduct in question is a medical "service" rather than a "product" under the Connecticut Product Liability Act.
Plaintiff Deborah Skerritt (hereinafter "plaintiff") filed a twelve-count revised complaint on December 18, 1990 sounding in fraud, negligence, product liability, and CUTPA against defendants Sandoz Nutrition Corporation (hereinafter "Sandoz"), Griffin Hospital, and Connecticut Practice Management, Inc. (hereinafter "CPM"). Plaintiff alleges that Sandoz distributed the Optifast Weight Control Program (herein after "Optifast program") to franchisees Griff in Hospital and CPM which "conducted, marketed, distributed and sold Optifast Program" to the plaintiff. Plaintiff alleges that her use of the Optifast Program resulted in bodily injuries, including the removal of her gall bladder. In the fifth and sixth counts, plaintiff alleges a product liability action as to Griffin Hospital and CPM, respectively. Plaintiff prays for monetary damages, punitive damages, attorneys' fees and any other relief given by law or equity.
Defendants argue in their memorandum of law in support of their Motion To Strike, that the fifth and sixth counts of the revised complaint are legally insufficient because as health care providers and not product sellers they fail to fall within the scope of the Product Liability Act, Conn. Gen. Stat. 52-572m. The plaintiff argues in opposition to the Motion to Strike that CT Page 5310 defendants are product sellers of the Optifast Program, thus falling within the scope of the Product Liability Act, Conn. Gen. Stat. 52-572m et seq.
Conn. Gen. Stat. 52-572n provides:
 Sec. 57-572n. Product liability claims. (a) A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by product.
Conn. Gen. Stat. 52-572m defines "product seller" and "product liability claim":
 (a) Product seller means any person or entity, including a manufacturer, wholesaler distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The terms "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.
 (b) "Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.
Conn. Gen. Stat. 52-572m(a) and (b).
 In order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect CT Page 5311 existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition. Restatement (Second), Torts 402A (1965); see Rossignol v. Danbury School of Aeronautics, Inc., 154 Conn. 549, 562, 227 A.2d 418.
Giglio v. Connecticut Light Power Co., 180 Conn. 230, 234
(1980). "Once a particular transaction is labeled a `service,' as opposed to a `sale' of a `product,' it is outside the purview of our product liability statute." Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399, 403 (1987) (under Conn. Gen. Stat.19a-280 the transfer of blood cannot be the basis for a product liability action).
There is a conflict of authority whether hospitals and health care providers are product sellers within the scope of the Product Liability Act. The following cases found that a hospital is not a "product seller" under the Act. Krawiec v. Olympus Corp. of America New Britain General Hospital, 3 CSCR 602, 603 (June 15, 1988, Aronson, J.) (portion of defective medical instrument slipped into patient's body during procedure performed at defendant Hospital); Lewis v. Hospital of Saint Raphael,3 CSCR 379 (March 15, 1988, Flanagan, J.) (hospital supplied surgeon with defective "fusion wire" used for neck surgery); Saccone v. Staub,1 CSCR 230 (April 10, 1986, Mihalakos, J.) (plaintiff injured when knife blade broke off inside her knee during surgery). Furthermore, "[t]he Connecticut Products [sic] Liability Act has, however, been construed as not encompassing transactions directed at service related conduct or transactions." Colangelo v. Norwalk YMCA, D.N. 07-54-87, Judicial District of Stamford/Norwalk at Stamford, Memorandum of Decision, January 17, 1986, Ryan, J.). But see Taylor v. Staub, 1 CSCR 727 (September 2, 1986, Kulawiz, J.) (motion to strike an action for a failed prosthetic knee denied because the plaintiff's allegation that the hospital is a product seller is legally sufficient); Miller v. Pharmacia Labs,3 CSCR 773 (August 24, 1988, Jacobson, J.) (plaintiff's allegation that hospital is a "product seller" of a catheter device is legally sufficient).
The fifth count of the plaintiff's revised complaint alleges that defendant Sandoz furnished Griffin Hospital with prepackaged food products and further alleges that "Griffin Hospital is liable and legally responsible to the plaintiff for her injuries and losses because the Optifast Program as conducted, marketed, distributed, and sold to plaintiff by Griffin Hospital is defective, unreasonably dangerous to participants such as plaintiff that could not follow the program without unreasonable risk of harm." The plaintiff further alleges that this count is brought as a product liability count pursuant to Conn. Gen. Stat. CT Page 531252-572m et seq. The sixth count alleges the same claim as to CPM.
The Motion to Strike the fifth and sixth counts of the Revised Complaint is denied in that sufficient facts are alleged to find that defendants are product sellers within the scope of the product liability act.
Stuart M. Schimelman, Judge.