[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 1, 1995
I. FACTS
On November 4, 1993, the plaintiff, Ronald W. Ferguson, filed a two-count amended complaint against the defendants, EBI Medical Systems ("EBI") and Lawrence and Memorial Hospital ("Lawrence 
Memorial"). Count one, which is directed against EBI, and count two, which is directed against Lawrence 
Memorial, are both brought pursuant to the Product Liability Act ("PLA"), General Statutes § 52-572m et seq., as a result of injuries allegedly sustained by the plaintiff because of a device known as a Pennig wrist fixator ("wrist fixator").[1] According to the plaintiff's amended complaint, Lawrence Memorial is liable to the plaintiff for selling him the allegedly defective CT Page 9942 product.[2]
On January 31, 1995, Lawrence Memorial filed a motion for summary judgment regarding count two of the plaintiff's amended complaint, on the ground that the PLA applies only to "product sellers," as that term is defined in the statute, and, as a matter of law, a hospital may not be deemed a product seller under the facts of the present case. In support thereof, Lawrence Memorial submitted a memorandum of law, the affidavit of Ms. Brenda Hodge, Nurse Manager of the Operating Room at Lawrence Memorial Hospital, dated January 26, 1995 ("Hodge Affidavit"), and excerpts from the deposition of Dr. Steven B. Carlow, dated December 8, 1993 ("Carlow Deposition").
In response, on February 27, 1995, the plaintiff filed a memorandum of law in opposition to Lawrence Memorial's motion for summary judgment. In support thereof, the plaintiff submitted excerpts from the deposition of Mr. Grover Talmadge Braswell, III, Group Product Director of EBI, dated July 8, 1994 ("Braswell Deposition"), as well as the Hodge Affidavit and the Carlow Deposition.
Thereafter, on April 11, 1995, Lawrence Memorial filed a reply brief to the plaintiff's memorandum of law and, on April 21, 1995, the plaintiff filed a supplemental memorandum of law in response to Lawrence 
Memorial's reply brief.
The documents submitted by the parties establish the following relevant facts: At the time of the incident which is the subject of this lawsuit, Dr. Carlow diagnosed the plaintiff as requiring two wrist reduction surgeries. Hodge Affidavit, at 2. Such surgeries, which were scheduled by Dr. Carlow to take place at the Lawrence Memorial Hospital on July 14, 1992, were to include the application of two external wrist fixators. Id. The wrist fixators were an essential component of the wrist reduction surgery, id., and the particular procedure could not have otherwise been performed without it. Carlow Deposition, at 27.
During this time period, Lawrence Memorial did CT Page 9943 not keep Pennig wrist fixators in stock at the hospital. Hodge Affidavit, at 2; Carlow Deposition, at 28. Rather, Lawrence Memorial's procedure required that a surgeon specifically request that the wrist fixator he opted to use in a surgery be made available by the scheduling coordinator of the operating room. Hodge Affidavit, at 1; Carlow Deposition, at 27. An order for such fixator was then placed by the materials coordinator of the operating room, to be delivered to the hospital on the date of the surgery. Hodge Affidavit, at 2. If the materials coordinator was not available, the physician would place the order to the fixator representative directly. Id.
In the present case, Dr. Carlow instructed the operating room coordinator to order two Pennig wrist fixators from a local representative. Id. The fixators are manufactured in Italy, and later sold to Lawrence 
Memorial by EBI. Braswell Deposition, at 14-15. On July 14, 1992, the two wrist fixators ordered for Dr. Carlow were delivered to the hospital to be used in the plaintiff's surgery. Hodge Affidavit, at 3.
Lawrence Memorial does not market, advertise or solicit the sale of Pennig wrist fixators; nor does it participate in the research, development or manufacture of said devices. Id. Rather, such wrist fixators are only obtained by the hospital when a physician specifically requests them for use in surgery for which the fixators are designed. Id.
In support of its motion for summary judgment, Lawrence Memorial argues that, although it may have furnished the allegedly defective wrist fixator to the plaintiff, it did so during the course of a surgical procedure in a manner which was incidental to its primary function of providing medical services. In other words, Lawrence Memorial simply acted as an "intermediary in the distribution chain" of the subject wrist fixators, in that it provided a mechanism to the patient and the surgeon to have said devices, which are incidental to surgery, available at the hospital. Accordingly, Lawrence Memorial argues, it is not a "product seller" within the meaning of the PLA. CT Page 9944
In response, the plaintiff argues that Lawrence 
Memorial does constitute a product seller under the PLA, because the definition of the term therein encompasses all of those who, for business purposes, sell a product from the time of manufacture through the time of consumption. In this regard, the plaintiff argues that: the courts of this state have not held, as a matter of law, that a hospital is incapable of falling within the definition of a "product seller" under the PLA; Lawrence Memorial has failed to produce sufficient facts to eliminate all doubt as to its status as a "product seller" under the PLA; and the facts produced establish that the "products" in this case were sold to the plaintiff rather than merely utilized during the rendition of services.
II. DISCUSSION
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm, 224 Conn. 524, 530,620 A.2d 99, cert. denied, U.S., 114 S.Ct. 176,126 L.Ed.2d 136 (1993).
"A `material' fact . . . [i]s a fact which will make a difference in the result of the case." United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364,379, 260 A.2d 596 (1969). "The test is whether a party would be entitled to a directed verdict on the same facts." State v. Goggin, 208 Conn. 606, 616, 546 A.2d 250
(1988).
"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue."Burns v. Hartford Hospital, 192 Conn. 451, 455,472 A.2d 1257 (1984). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of CT Page 9945 material fact together with the evidence disclosing the existence of such an issue." Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005
(1984). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. `Mere assertions of fact . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380.'" Burns v. HartfordHospital, supra, 192 Conn. 455, quoting Bartha v.Waterbury House Wrecking Co., 190 Conn. 8, 12,459 A.2d 115 (1983).
Under Connecticut law, a "product liability claim" includes "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." General Statutes § 52-572m(b). Pursuant to General Statutes § 52-572n(a), however, product liability claims may only be asserted against "product sellers." Hines v. JMJ Construction Co., Superior Court, JD of Hartford-New Britain at Hartford, DN 506329, 8 CONN. L. RPTR. 232 (January 11, 1993) (Miano, J.), citing Regal Steel Inc. v. Farmington ReadyMix, Inc., 36 Conn. Sup. 137, 139 (Super.Ct. 1980). Thus, to recover under the PLA, a plaintiff must prove that the defendant was engaged in the business of selling the product, Giglio v. Connecticut Light PowerCo., 180 Conn. 230, 234, 429 A.2d 486 (1980), rather than the providing of a service, because "[o]nce a particular transaction is labeled a `service,' as opposed to a `sale' of a `product,' it is outside the purview of our product liability statute." Zichichi v. Middlesex MemorialHospital, 204 Conn. 399, 403-05, 528 A.2d 805
(1987) (holding that, because the provision of blood is a medical service rather than a "sale" of a product, the PLA does not apply).
"Whether [a] defendant is a `product seller' for purposes of the Product Liability Act is a matter of law for the court to determine." Hines v. JMJ ConstructionCo., supra, citing Burkert v. Petrol Plus of Naugatuck,Inc., 216 Conn. 65, 72, 579 A.2d 26 (1990). See also CT Page 9946Arroyo v. UBE Industries America, Inc., Superior Court, JD of Hartford-New Britain at New Britain, DN 449078, 9 CONN. L. RPTR. 25 (April 13, 1993) (Langenbach, J.) (same). To date, however, no appellate court in Connecticut has specifically addressed the issue of whether a hospital constitutes a "product seller" under the PLA. Accordingly, the court looks to other sources in resolving the issue before it.
The term "product seller" is defined by the PLA as:
 any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.
General Statutes § 52-572m(a). Although the PLA does not set forth a specific list of those persons or entities who should be considered product sellers, "[t]he legislative history of the Connecticut statute states that `the definition of product seller is taken verbatim from the draft uniform product liability law, U.S. Department of Commerce.'" Hines v. JMJ Construction Co.,supra, quoting 22 S.Proc., Pt. 14, 1979 Sess., p. 4636. Said Act expressly "excludes from its coverage the provider of professional services when a product is utilized or sold as part of the rendition of such services." Department of Commerce Model Uniform Product Liability Act § 102(A), quoted in Saccone v. Staub,1 CSCR 230, 231 (1986) (Mihalakos, J.).
Further, although it initially appears that a split of authority exists on the issue among the Connecticut Superior Court judges, a careful examination of their decisions reveals that one line of thought on the issue is far more persuasive than the other. It is true, as the plaintiff points out, that three Superior Court decisions appear to suggest that a hospital may be deemed a "product seller" under the PLA. In Skerritt v. SandozNutrition Corp., 4 CONN. L. RPTR. 691, 6 CSCR 688
(1991) (Schimelman, J.), Miller v. Pharmacia Labs,3 CSCR 773 (1988) (Jacobson, J.), and Taylor v. Staub,
CT Page 99471 CSCR 727 (1986) (Kulawiz, J.), the courts did deny the defendant-hospitals' motions to strike the counts brought against them under the PLA. However, in each of these cases, the courts also specifically pointed out that the sole inquiry at such a stage of the pleadings was limited to: whether the plaintiff had plead that the defendant-hospital was a "product seller," thereby setting forth the necessary allegations to state a cause of action under the PLA. For this reason, the court finds that the merits of the issue presently before it were never directly addressed in Skerritt v. SandozNutrition Corps., supra, Miller v. Pharmacia Labs,supra, and Taylor v. Staub, supra.
In contrast, every hospital-defendant that has challenged a complaint brought against it under the PLA by means of a motion for summary judgment was successful on that motion. See Krawiec v. OlympusCorp. of America and New Britain General Hospital,3 CSCR 602 (1988) (Aronson, J.), Lewis v. Hospital of St.Raphael, 3 CSCR 379 (1988) (Flanagan, J.), and Uzarv. Browne, 2 CSCR 1055 (1987) (Lewis, J.). In each of these decisions, the courts reasoned that, because hospitals are providers of medical services, rather than sellers of the products and equipment they furnish in the performance of their primary function of health care service, they should be deemed exempt from liability under the PLA. See also Saccone v. Staub,supra, 1 CSCR 230-31 (granting the defendant-hospital's motion to strike the PLA count brought against it for the same reason).
The court finds it persuasive that every Superior Court decision that has directly addressed the merits of this issue has rejected the proposition that hospitals constitute "product sellers" under the PLA. Krawiec v.Olympus Corp. of America and New Britain GeneralHospital, supra; Lewis v. Hospital of St. Raphael,supra; Uzar v. Browne, supra. Moreover, the court finds that these cases also appear in line with the Connecticut Supreme Court's conclusion in Zichichi v.Middlesex Memorial Hospital, supra, 204 Conn. 403, wherein the court held that once a particular transaction is found to be a service, it is outside the purview of the PLA. CT Page 9948
Finally, the court notes that, in other contexts, Connecticut courts have repeatedly recognized that "where [a] contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods . . ." Hines v. JMJ ConstructionCo., supra (a concrete subcontractor who designed, constructed, prepared, assembled, installed and/or placed a sidewalk did not place "goods" in the "stream of commerce" and, therefore, is not a "product seller" under the PLA), quoting Gulash v. Stylarama, Inc.,33 Conn. Sup. 108, 111 (C.P. 1975) (installation of a defective swimming pool is not a sale of goods under the Uniform Commercial Code), and citing Epstein v.Giannattasio, 25 Conn. Sup. 109, 114 (C.P. 1963) (hair treatment by a beautician is not a sale of goods under the Uniform Commercial Code). See also Burke v.Planned Parenthood of Connecticut, Inc., 2 CSCR 958
(1987) (Hurley, J.) (the distribution of contraceptive devices by a Planned Parenthood group does not constitute a "sale" under the PLA); Dumitrie v. Fernap,Inc., Superior Court, JD of Fairfield at Bridgeport, DN 288824, 11 CONN. L. RPTR. 449 (April 25, 1994) (Pittman, J.) (one in the business of constructing sidewalks is engaged in the performance of a service rather than a sale of a product under the PLA); Eagen v.Harnischfeger Corp., 2 CONN. L. RPTR. 662 (1990) (Lewis, J.) (a general contractor is not a product seller within the meaning of the PLA); Mount St. JosephAcademy Corp. v. Johnson Controls, Inc., 9 CLT No. 20, p. 13 (1982) (Hammer, J.) (action under the PLA does not lie against architects and engineers who provide professional services, because said individuals are not responsible for placing defective products in the marketplace);Colangelo v. Norwalk YMCA, 2 CSCR 732
(1987) (Emmett, J.) (the PLA does not encompass the professional services rendered by an architect to an individual customer). But see Vincenzo v. Trus WallSystems, Inc., 5 CLT No. 34, p. 19 (1979) (Mancini, J.) (a designer may be held strictly liable for a defectively designed product).
In the present case, it is undisputed that Lawrence Memorial furnished the allegedly defective wrist CT Page 9949 fixator to the plaintiff during the course of a surgical procedure, of which said wrist fixator was an essential component. Hodge Affidavit, at 2; Carlow Deposition, at 27. Further, "the principal thing bargained for [herein] [was] not the product transmitted but the professional services of the defendant." Krawiec v.Olympus Corp. of America and New Britain GeneralHospital, supra, 3 CSCR 603, quoting W. Page Keeton,Prosser and Keeton on Torts, § 104, at 720 (5th Ed. 1984). Applying the law set forth herein to these particular facts, the court holds that Lawrence 
Memorial was a provider of services of which the subject wrist fixators were an incidental part, rather than a "product seller" of such fixators under the PLA.
III. CONCLUSION
For the above stated reasons, Lawrence 
Memorial's motion for summary judgment regarding count two of the plaintiff's amended complaint is hereby granted.