ANTHONY J. RODIA ET AL. *v.* TESCO
CORPORATION ET AL.
(4804)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 6—decision released June 30, 1987

*Jason M. Dodge,* with whom, on the brief, was *Michael J. O'Sullivan,* for the appellant (C.N. Flagg & Company, Inc.).

*Steven W. Varney,* with whom, on the brief, was *Ronald T. Scott,* for the appellees (plaintiffs).

*Molly S. Le Van,* with whom, on the brief, was *Paul B. Pollock,* for the appellee (named defendant).

BORDEN, J. This case involves a product liability action brought by the named plaintiff and his wife for injuries sustained by the named plaintiff while operating a forklift in the course of his employment. The plaintiffs filed suit against two defendants: Clark Equipment Company (Clark), the manufacturer of the forklift; and Tesco Corporation (Tesco), the lessor of the forklift to the plaintiff's employer, C.N. Flagg & Company, Inc. (Flagg). Flagg moved to intervene as a coplaintiff in the action pursuant to General Statutes § 31-293,[1] in order to recover benefits it had paid to the named plaintiff under the Workers' Compensation Act. The plaintiffs and the defendants objected to the motion to intervene.[2] The trial court denied Flagg's motion. The propriety of this ruling is the subject of this appeal. We find no error.

---

[1] General Statutes § 31-293 provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto . . . such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee."

[2] In the trial court, the plaintiffs and the defendants moved to strike the intervening complaint, assuming that Flagg's motion to intervene had already been granted. The trial court could not, however, find any such order in the court file. It therefore treated the plaintiffs' and the defendants' pleading as an objection to the motion to intervene, and thereafter ruled in their favor.

Before addressing the merits of the trial court's ruling, we must determine whether the denial of Flagg's motion to intervene is properly before this court as an appealable final judgment. We have stated that "an unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless he can make a colorable claim to intervention as a matter of right." *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985). In *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 322 n.1, 435 A.2d 352 (1980), our Supreme Court recognized that a party makes a colorable claim to intervention as of right when it seeks to intervene in a personal injury action where it has paid workers' compensation to a plaintiff. As the court noted, this colorable claim arises out of General Statutes § 31-293. See footnote 1, supra. Since Flagg seeks to intervene in the plaintiffs' product liability suit for the same reason, the trial court's action is a final judgment for purposes of this appeal.

The plaintiffs and the defendants argue that Flagg is precluded from intervening in this action by the clear language of General Statutes § 52-572r (c). That statute provides in relevant part that "[n]either an employer nor . . . the insurer of such employer, shall have any lien upon any judgment received in any *product liability claim,* or any right of subrogation if the claim against the third party is a product liability claim." (Emphasis added.) " 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the *manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling* of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express

or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation or nondisclosure, whether negligent or innocent." (Emphasis added.) General Statutes § 52-572m (b).

Flagg concedes that if the plaintiffs' complaint sounds solely in product liability, it would be precluded from intervening since it is an "employer" under General Statutes § 52-572r (c). Flagg claims, however, that the allegations in the third count of the plaintiffs' complaint,[3] directed at Tesco, the lessor, reveal a claim for negligent repair and maintenance, which is not a prod-

---

[3] The pertinent allegations of the plaintiffs' complaint are as follows: "8. At all times mentioned herein and for some time prior to January 19, 1984, the defendant TESCO CORPORATION, was a Connecticut corporation, with its principal office located in Berlin, Connecticut, engaged in leasing forklifts and other related equipment to consumers and businesses.

"9. At some time prior to January 19, 1984, the defendant TESCO CORPORATION leased or rented the aforementioned forklift manufactured by the defendant CLARK EQUIPMENT COMPANY to plaintiff's employer for use at the construction site located at the United Illuminating plant in Bridgeport, Connecticut.

"10. The aforementioned forklift was used by the plaintiff and other employees of his employer in the manner intended by the defendant TESCO CORPORATION when said vehicle was leased.

"11. The aforementioned incident was caused by the negligence and carelessness of the defendant TESCO CORPORATION acting through its employees, servants and agents in one or more of the following ways:

"a. *In that the agents, servants and employees of the defendant TESCO CORPORATION failed to properly maintain and repair said forklift.*

"b. In that the agents, servants and employees of the defendant TESCO CORPORATION failed to properly inspect said forklift and fork chain for defects and take necessary actions to correct said defects prior to leasing said vehicle for use.

"c. In that said agents, servants and employees failed to warn users of said forklift and the plaintiff of the defective and dangerous condition of said forklift and lift chain, although they knew or should have known of the defective condition of said forklift and lift chain.

"d. In that said agents, servants and employees failed to properly report damage done previously to said forklift and to take necessary precautions to inspect and repair said forklift and lift chain." (Emphasis added.)

uct liability claim within the meaning of General Statutes § 52-572m (b). Flagg argues that the enumeration in General Statutes § 52-572m (b) is both exhaustive and exclusive of the types of conduct which will give rise to a product liability claim. Therefore, Flagg argues, because "repair" and "maintenance" are not specifically included within the statutory enumeration, the plaintiffs' complaint does not solely state a product liability claim, and Flagg is not barred from intervening.

The plaintiffs, in their brief, have limited the scope of count three of the complaint to apply only to the failure to repair or maintain the forklift *prior* to its delivery to the named plaintiff's employer. We view this statement by the plaintiffs in their brief as analogous to a judicial admission and therefore binding on the plaintiffs. We see no reason not to accept this limitation, self-imposed by the plaintiffs, on the scope of their own complaint. This reading of paragraph eleven of count three; see footnote 3, supra; is consistent with the rest of the complaint, whereas a contrary reading would be inconsistent therewith. Of course, by offering this limitation the plaintiffs preclude themselves from claiming at the trial of this case any reliance on the failure to repair or maintain the forklift after its leasing by Tesco to Flagg.

Consequently, we are faced with the narrow issue of whether predelivery negligent maintenance and repair of a leased product is within the scope of a product liability claim. A lessor is a "product seller" within the meaning of General Statutes § 52-572m (a). We conclude that an allegation that a lessor negligently fails to repair or maintain its product prior to leasing it, states a "product liability claim." General Statutes § 52-572m (b).

The characterization of the types of conduct or activity enumerated in General Statutes § 52-572m (b) must be broadly construed in light of the purposes of the statute. A principal purpose of the product liability statute is to protect people from harm caused by defective and hazardous products. In order to meet this purpose, it is necessary that the statute be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce. The terms enumerated in General Statutes § 52-572m (b) are simply generic categories of conduct which must be read broadly and in relationship to one another in order to accomplish the purposes of the statute. Thus, such generic, categorical terms as "preparation . . . installation, [and] testing," read in light of the principal purpose of the statute which we have identified, are quite broad enough to include the failure to maintain and repair a product prior to placing it in the stream of commerce.

Our conclusion is sensible in light of the clear mandate of the product liability statute to provide the exclusive remedy in this area. *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571–72, 512 A.2d 893 (1986). The legislature could not have intended to preclude from this exclusive remedy a preleasing failure to maintain and repair which affected the safety of a product.

The cases Flagg has cited in support of its argument are inapplicable. They stand for the proposition that a "repairer" cannot be held liable under a product liability claim. *Winans* v. *Rockwell International Corporation,* 705 F.2d 1449 (5th Cir. 1983); *Swensen Trucking & Excavating, Inc.* v. *Truckweld Equipment Co.,* 604 P.2d 1113 (Alaska 1980). This may be so where the repairer is not the product seller and, therefore, did not put the product into the stream of commerce; General Statutes § 52-572m (a); but merely repaired the

product after the fact. In this case, the defendant lessor was a product seller which acted upon the product before leasing it.

Flagg's reliance upon *Regal Steel, Inc.* v. *Farmington Ready Mix, Inc.,* 36 Conn. Sup. 137, 414 A.2d 816 (1980), is equally misplaced. First, a decision of the Superior Court is not binding on this court. Second, that case held that a complaint did not state a product liability claim because the plaintiff did not allege that the defendant was a *product seller* within the statutory meaning of that term; General Statutes § 52-572m (a). In this case all parties concede that Tesco, as a lessor, is a product seller under the statute. Flagg relies on a footnote in *Regal Steel, Inc.* v. *Farmington Ready Mix, Inc.,* supra, 139 n.2, which states that maintenance of a defect is outside the scope of the product liability statute. Although it is not entirely clear, we read this footnote to apply to maintenance performed on a product *after* it has been delivered to a person.

There is no error.

In this opinion the other judges concurred.