[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Ruling Re: Defendant's Motion To Strike (File #107) And Plaintiff's Objection (File #109)
This four count complaint is for property loss damages resulting from the destruction of a 1983 Southwind motor home which caught fire at defendant's business premises on October 3, 1988.[1] The first count alleges that defendant was in the business of repairing or servicing recreational vehicles and that the fire and resultant loss were caused by defendant's breach of contract and breach of an implied warranty to perform repairs in a workmanlike and skilled manner. The second count alleges that the motor home was delivered to defendant "for repair and for work . . . including problems associated with the electrical and propane system and the refrigerator," and that the property loss was "directly and proximately caused by the negligence of the defendant" in failing to properly "repair" the said vehicle. The third count alleges a breach of duty under a bailment relationship. And, the fourth count, alleging that the motor home was purchased from defendant on or about May 10, 1988, asserts a products liability claim pursuant to General Statutes Section 52-572m, et seq.[2]
Defendant has moved to strike the complaint on the ground that the initial counts set forth claims encompassed within Connecticut's Products Liability Act.[3] Plaintiff has filed an Objection to the motion to strike contending that the first three counts do not constitute those usual and traditional common law theories which were meant to be eliminated by the passage of the products liability statute.
A motion to strike tests the legal sufficiency of the allegations of the complaint, or any one or more of the counts thereof. Prac. Bk. Section 152. In ruling on a motion to strike, the court is limited in its consideration to the facts alleged, and these facts must be construed in the manner most favorable to the pleader. Rowe v. Godou, 209 Conn. 273, 278
(1988); Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170 (1988).
General Statutes Section 52-572n states: "A product liability claim as provided in sections 52-240, 52-240b, 52-572m
to 52-572r, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." (Emphasis added). In Daily v. New CT Page 2538 Britain Machine Co., 200 Conn. 562, 571 (1986), our Supreme Court stated that the products liability statute provides an exclusive remedy and that a common law cause of action could not be brought for a claim within the scope of the statute. "If the legislature intended to allow a party to plead common law theories, it would not have used the mandatory language `shall be in lieu of.'" Id. at p. 571. Following Daily, the issue of exclusivity was addressed directly by the Supreme Court in Winslow v. Lewis-Shepard, Inc., 212 Conn. 462 (1989); the Court held:
 "The legislature clearly intended to make our products liability act an exclusive remedy for claims falling within its scope. Accordingly, we conclude that the trial court acted correctly in granting the defendants' motion to strike the common law counts of product liability from the plaintiff's complaint on the basis that our products liability act provides the exclusive remedy for such claims. (Emphasis added).
Winslow v. Lewis-Shepard, Inc., supra at p. 471.
Plaintiff contends that the first three counts of this complaint are outside the scope, or coverage, of the products liability act because the facts alleged in those counts concern repairs made to the Southwind motor home subsequent to its sale to Mr. Dunlap; that is, repairs made to the motor home after the introduction of the product into the stream of commerce. General Statutes Section 52-572m(a) defines "Product seller" as meaning "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption"; and, the term "also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products." General Statutes Section52-572m(b) defines "Product liability claim" as including "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product"; and, the term "shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." (Emphasis added)
In Rodia v. Tesco Corporation, 11 Conn. App. 391 (1987), CT Page 2539 it was held that a product seller's (lessor's) negligent predelivery repair and maintenance fell within the ambit of a product liability claim; the Court stated:
 "A lessor [of a forklift] is a `product seller' within the meaning of General Statutes Section 52-572m(a). We conclude that an allegation that a lessor negligently fails to repair or maintain its product prior to leasing it, states a product liability claim. [Emphasis added]
Id. at p. 395.
Referring to the language in Daily (as later confirmed by the holding of Winslow) that the products liability statute provides an exclusive remedy, the Rodia court went on to state: "The legislature could not have intended to preclude from this exclusive remedy a preleasing failure to maintain and repair which affected the safety of a product." (Emphasis added). Id. at p. 396.
In the instant case, the first three counts of the complaint do not allege harm caused by the defendant in its capacity as a product seller, but rather, harm caused by repairs made subsequent to the sale. In Rodia, the allegations were that "the defendant lessor was a product seller which acted upon the product before leasing it" (Emphasis added); here, the allegations of the first three counts deal with repairs made to the product after it was placed into the stream of commerce. Therefore, the first three counts of the complaint are not encompassed within the scope of the Products Liability Act, and the exclusivity of that enactment does not render those counts legally insufficient.
Defendant relies on Kearney, et al. v. Philips Industries, Inc., Civil No. B-84-511, United States District Court, District of Connecticut, February 9, 1988 (Eginton, J.). That case simply stands for the proposition that where "a plaintiff alleges violation of the Products Liability Act, he may not plead in separate counts alternative common-law claims," citing Savona v. General Motors Corp., 640 F. Sup. 6 (LD. Conn. 1985) and Daily v. New Britain Machine Co., supra. The Kearney decision merely applies the principle of exclusivity as stated by the Connecticut Supreme Court in Daily, and later confirmed by that Court in the Winslow case; neither Kearney nor Savona deal with the issue at hand, that is, whether allegations such as these, relating to repairs made after the product has been introduced into commerce, fall within the purview of a products liability claim. In Community Lumber and Hardware, Inc. v. City CT Page 2540 Answering Service, 16 CLT 5 (1/29/90), it was held that allegations attacking the negligent performance of a service which, under the pleadings, is not attributable to the product, may be pleaded in the alternative. In Riccio v. Roadway Package Systems, Inc., 2 CSCR 1057 (9/15/87), the Court denied the motion to strike five counts alleging misleading business practices based on a contractual relationship where the sixth count alleged a product liability claim; the Riccio court held that the first five counts (including breach of contract, breach of an implied covenant of good faith, and misrepresentation) were not product liability claims because they did not seek to recover for personal injury, death or property damage, and therefore, the Products Liability statute did not bar, or render legally insufficient, those other counts. In the present case, consistent with, the reasoning and language of Rodia, the separate theories of recovery as alleged in the first three counts of this complaint, which pertain specifically to repairs made after the product was sold, are properly pleaded alternatively to the products liability claim set forth in the last count.
Defendant contends that plaintiff has improperly pleaded the statutory products liability claim in Count Four. Paragraph #2 of the First Count is incorporated in the Fourth Count; paragraph #8 of the Fourth Count states that this "action is brought as a products liability claim pursuant to Section52-572 et seq. of the Connecticut General Statutes." Reading the allegations of Count Four most favorably to the plaintiff, as the court must with respect to the instant motion, it reasonably appears that plaintiff has alleged: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition, unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and, (5) the product was expected to and did reach the consumer without substantial change in condition. See: e.g., Zichini v. Middlesex Memorial Hospital,204 Conn. 399, 402-403 (1987) (and authorities cited therein). A fair reading of paragraphs #1 thru #13 of the fourth count indicates that plaintiff has alleged facts stating a claim under Connecticut's Products Liability Act and, therefore, the fourth count of the complaint should not be stricken as legally inadequate.
Plaintiff's motion to strike the complaint is hereby Denied.