[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE SECOND COUNT OF PLAINTIFF'S SECOND REVISED COMPLAINT
The plaintiff filed his original complaint on November 23, 1990, seeking to recover for injuries sustained as a result of an allegedly defective product manufactured by defendant Soft Sheen Products (Soft Sheen), and distributed by defendants Beauty Enterprises, Inc. and American Discount Stores. In his revised complaint, filed on March 11, 1991, the plaintiff alleges that on January 10, 1989, he applied "Soft Sheen Care CT Page 2868 Free Curl Instant Moisturizer with Glycerin and Protein" to his hair. The plaintiff alleges that later on that same day, he attempted to light a cigar with a lighter and his hair "burst into flames," causing him to sustain severe injuries.
The plaintiff's revised complaint alleged: a cause of action under the Connecticut Product Liability Act, General Statutes 52-572m et seq. ("PLA") (first count); a cause of action under the Connecticut Unfair Trade Practices Act, General Statutes 42-110a et seq. ("CUTPA") (second count); and a cause of action under the Consumer Product Safety Act, 15 U.S.C. § 2068
et seq. ("CPSA") (third count). Soft Sheen filed a motion to strike the plaintiff's second and third counts on March 9, 1992. The court (Leheny, J.) granted Soft Sheen's motion on November 17, 1992. (See Christy v. Soft Sheen, 7 Conn. L. Rptr. No. 20, 602 [December 14, 1992]. In so doing, the court ruled that the PLA provides the exclusive remedy for physical injuries caused by an allegedly defective product, and since the plaintiff's CUTPA claim was predicated upon such injuries, it was precluded by the PLA's exclusivity provision.
The plaintiff filed a revised two-count complaint on November 27, 1992. (To avoid confusion, this new complaint will be referred to as "the second revised complaint.") The first count alleges a cause of action under the PLA. The second count alleges a CUTPA claim against Soft Sheen.
Soft Sheen filed a motion to strike the second count of plaintiff's second revised complaint, along with a supporting memorandum of law. (Both dated December 7, 1992; file missing.) The plaintiff filed an objection along with a memorandum in opposition. (Both dated December 23, 1992; file missing.)
A motion to strike allows the moving party to contest the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989). In analyzing a motion to strike, the court is limited to the facts alleged in the pleading; Rowe v. Godou, 209 Conn. 273, 278, 550 A.2d 1073
(1988); which must be construed in the light most favorable to the pleader. Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 540 A.2d 1185 (1988). If the court finds that the facts alleged in the pleading support a cause of action, the motion to strike must be denied. Ferryman v. Groton, supra, 142. CT Page 2869
In support of its motion to strike the second count, Soft Sheen argues that the plaintiff's CUTPA claim falls within the scope of the PLA because the plaintiff is still seeking to recover damages for physical injuries that were allegedly caused by a defective product. Soft Sheen also argues that the plaintiff fails to allege that he suffered a consumer injury, or that Soft Sheen engaged in an unfair or deceptive trade practice.
In response, the plaintiff argues that the PLA does not preclude a CUTPA claim that is based on allegations that a defendant-product seller misrepresented the safety of its product. The plaintiff also argues that his claim sufficiently alleges unfair and deceptive business practices on the part of Soft Sheen, as the allegations refer to Soft Sheen's business practices prior to the date that the plaintiff sustained his physical injuries.
The relevant CUTPA sections of the General Statutes are as follows:
 Section 42-110b(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.
 Section 42-110a(4) "Trade" and "Commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state.
 Section 41-110g(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required. . . .
In determining whether a practice violates CUTPA, we use the following criteria: "(1) [W]hether the practice, without CT Page 2870 necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] competitors or other businessmen." (Citations omitted.) Daddona v. Liberty Mobile Homes Sales, Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988).
To satisfy the "ascertainable loss" requirement, the plaintiff need only prove that he or she purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different than what he bargained for. Hinchcliffe v. American Motors Corp., 184 Conn. 607, 614-15,440 A.2d 810 (1981).
General Statutes 52-572m(b) defines a "product liability claim" as one which "includes all claims or actions brought for personal injury . . . caused by the . . . formula . . . warnings. . . . or labeling of any product." The principal purpose of the PLA is to provide a remedy for people who have been harmed by defective products. Rodia v. Tesco Corporation, 11 Conn. App. 391,396, 527 A.2d 721 (1987). "If the cause of action being pressed . . . is essentially identical — in wrongs asserted and in relief sought — with that being pursued under the PLA, then it comes within the [PLA's] scope and must be precluded." Utica Mutual Insurance Co. v. Denwat Corp., 778 F. Sup. 592, 597 (D. Conn. 1991).
The plaintiff makes the following allegations in the second count of his second revised complaint:
 6. At all times herein mentioned, the defendant, Soft Sheen Products, Inc., was and is engaged in "trade or "commerce" within the meaning of 42-110b of the Connecticut General Statutes, specifically, said defendant was engaged in the manufacture, distribution, and sale of a certain hair care product known as "Soft Sheen Care Free Curl Instant Moisturizer with Glycerin and Protein" (hereinafter "Soft Sheen"), which product was sold in the State of Connecticut.
 7. Prior to 1983, the defendant, Soft Sheen Products, Inc. was advised and aware of the fact that the glycerin ingredient in "Soft Sheen" was highly flammable and has a flammability CT Page 2871 flash point which renders the "Soft Sheen" product after use and application susceptible to igniting when exposed to heat, fire and/or flame.
 8. After 1983 through January 10, 1989 defendant, Soft Sheen Products, Inc. continued to manufacture, sell and distribute the aforesaid flammable and dangerous product "Soft Sheen", knowing that the combination of certain ingredients in the "Soft Sheen" product was inherently dangerous and flammable and posed a dangerous risk to the safety of the general public and consumers of said product within the State of Connecticut.
 9. Prior to 1983, the defendant, Soft Sheen Products, Inc., knew that there existed an appropriate and viable ingredient which would have had the same qualities as the glycerin and which would have reduced the flammable propensity of "Soft Sheen" if said defendant, had used the substitute ingredient instead of glycerin.
 10. Despite the information it acquired prior to 1983 and thereafter, that the "Soft Sheen" product was dangerously flammable, said defendant, Soft Sheen Products, Inc., neglected and/or refused to substitute the less flammable ingredient sorbitol, for glycerin in "Soft Sheen", and said defendant continued to manufacture, sell and/or distribute the "Soft Sheen" product in Connecticut subsequent to learning of the inherent danger and defect in its formula, through January 10, 1989.
 11. On January 10, 1989 the plaintiff, Lymus Christy, was injured, damaged and sustained an ascertainable loss as a result of said defendants unfair and deceptive trade practices as aforesaid.
 12. The aforesaid wrongful conduct of the defendant, Soft Sheen Products, Inc., specifically the continued manufacture, distribution and sale within the State of Connecticut of the "Soft Sheen" product with glycerin instead of the less flammable sorbitol during the period 1983 through January 10, 1989, constitutes unfair or deceptive acts or practices in violation of 42-110b of the Connecticut General Statutes.
In the second count of his second revised complaint, the plaintiff is alleging that Soft Sheen's conduct in designing, manufacturing and selling an "inherently dangerous" product CT Page 2872 caused the plaintiff's injuries, as the plaintiff specifically relies upon the allegation that the product contains glycerin, a highly flammable substance, to support his CUTPA claim.
The plaintiff's second count does not allege that he suffered a consumer or pecuniary loss due to a deceptive trade practice, or that he purchased the product as a result of an unfair or deceptive practice or act. Thus, the plaintiff's second count contains no allegations that place the plaintiff's CUTPA claim outside the broad scope of the PLA. Because the plaintiff's claims under the PLA and CUTPA allege that Soft Sheen's conduct in designing, manufacturing, and selling the product caused the plaintiff's injuries, the plaintiffs second count, which sounds in CUTPA, is precluded by the plaintiff's claim pursuant to the PLA (as pled in the first count), and Soft Sheen's motion to strike the second count of the plaintiff's second revised complaint is granted.
BALLEN, JUDGE