[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The issues raised by the defendants' motions for summary require a determination of who is considered a product seller under the Connecticut Product Liability Act and a determination of when statutes of limitation commence running.
FACTUAL BACKGROUND CT Page 2415
The plaintiffs, Robert Lang and Catherine M. Kandefer-Lang, filed a seven count second revised amended complaint, dated October 16, 1995, against four defendants in connection with a house fire which occurred on December 29, 1993, allegedly causing extensive damage to real and personal property. The defendants are Brom Builders (Brom) (the general contractor who built the Langs' home), Wayne Willis and Charles Willis (the Willises) (the subcontractors who allegedly installed a defective chimney), and Pete's Cycles Stoves, Inc. (Pete's) (the stove shop that sold the prefabricated chimney to the general contractor).
In relevant part, the Langs allege that the fire was caused by a defective prefabricated metal chimney which was installed when the home was built. The fire occurred when the cap to the prefabricated chimney clean-out tee fell off the chimney which allowed sparks to exit the chimney and ignite the home. The prefabricated chimney was defective because the cap to the clean-out tee was not properly affixed to the prefabricated chimney and the chimney did not contain a method of securely attaching the cap to the clean-out tee. Brom was the general contractor responsible for the construction of the Langs' home. Brom hired the Willises as subcontractors and Brom and the Willises installed the prefabricated chimney. The Langs further allege that Brom and the Willises are product sellers under the Connecticut Product Liability Act (CPLA), that Brom and the Willises were negligent in their installation of the chimney, and that they breached their implied warranties that their work would be done in a safe and proper manner.
The Langs' complaint contains the following causes of action: a product liability claim against Brom (count I), a negligence claim against Brom (count II), a breach of implied warranty claim against Brom (count III), a product liability claim against Pete's (count IV), a product liability claim against the Willises (count V), a negligence claim Willises (count VII).
Brom filed an answer and special defenses on February 22, 1996. In its answer Brom admits that it was the general contractor responsible for the construction of the Langs' home, and that it hired the Willises as subcontractors. Brom admits that it purchased the chimney materials from Pete's, and denies that the Willises purchased the chimney materials. Brom admits that it constructed a chimney for the Langs, but denies that it "sold" them a prefabricated chimney. Lastly, Brom denies that it CT Page 2416 is a product seller who sold a defective product, denies that it was negligent, and denies that it breached any express and/or implied warranties. Brom filed the following three special defenses with its answer: (1) That the Langs' negligence claim (count I) is time barred by General Statutes § 52-584; (2) that the Langs' breach of warranty claims (count III) are time barred by General Statutes §§ 47-117, 47-118, 47-121, and52-576; and (3) that the Langs were comparatively negligent in that they failed to properly inspect, clean, and maintain the chimney.
The Willises filed an answer and special defenses on March 5, 1996. In their answer, the Willises admit that they were hired by Brom as subcontractors for the construction of the Lang home, and that a prefabricated chimney was constructed. The Willises deny that they purchased and/or sold the allegedly defective chimney to the Langs. They further deny that they are product sellers, that they were negligent, or that they breached any express or implied warranties. The Willises also assert the same three special defenses that Brom filed.
It is undisputed that the construction of the Langs' home was completed prior to January 1, 1988. (See exhibits B and C of Brom's memorandum in support of its motion for summary judgment, both of which contain a copy of the certificate of occupancy, dated August 28, 1987; also see the Langs' responses to requests for admissions, exhibit F of the Willises' memorandum in support of its motion for summary judgment, and exhibit B of Brom's memorandum in support of its motion, in which the Langs admit that all construction on their home was completed by the end of the 1987 calendar year and that the certificate of occupancy was issued on October 1, 1987.)
On November 2, 1995, Brom filed a motion for summary judgment as to counts one, two and three of the complaint; this motion was reclaimed on October 2, 1996. Brom moves for summary judgment on the grounds that it is not a product seller, and that the Langs' negligence and breach of warranty claims are barred by the applicable statutes of limitation. Brom filed an accompanying memorandum in support of its motion for summary judgment, with attached exhibits, including an affidavit of Carl Morello (the superintendent for Brom on the construction of the Langs' home), receipts from Pete's, work orders of Wayne Willis, the Langs' responses to requests for admissions, the certificate of occupancy, and case law. CT Page 2417
On March 17, 1997, the Willises filed a motion for summary judgment as to counts five, six and seven of the complaint. The Willises move for summary judgment on the grounds that they are not product sellers, and that the Langs' negligence and breach of warranty claims are time barred. The Willises filed an accompanying memorandum of law in support of their motion, with attached exhibits including an affidavit of Wayne Willis, receipts from Pete's, deposition testimony of Carl Morello, work orders of Wayne Willis, the Langs' responses to requests for admissions, the certificate of occupancy, and case law.
The Langs filed an opposition to Brom's motion for summary judgment on October 17, 1996, and an accompanying memorandum in support of their opposition. On April 28, 1997, the Langs filed a memorandum in opposition to the Willises' motion for summary judgment.
LEGAL DISCUSSION
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." Bruttomesso v. Northeastern Connecticut SexualAssault Crisis Services, Inc., 242 Conn. 1, 5, 698 A.2d 795
(1997).
A. Product Liability
 a. Brom's motion for summary judgment as to count one.
 i. Whether the prefabricated chimney is a product under the CPLA.
Brom moves for summary judgment as to count one of the Langs' complaint on the ground that it is not a product seller. Generally, Brom argues that a home is not a product. The Langs CT Page 2418 argue that whether a home is a product is irrelevant since the prefabricated chimney is a product.
The CPLA
"Strict products liability is based on a policy that assumes that certain losses are better distributed in our society not on the basis of fault, but rather with regard to the ability of the involved parties to absorb them. The doctrine represents a policy decision that the burden of injuries brought about by a defective product should not be placed upon the individual who uses the product, but, rather, should be borne by the manufacturer or supplier, and thus eventually be spread among the consuming public." Wagner v. Clark Equipment Co., 243 Conn. 168, 194,700 A.2d 38 (1997), citing 2 Restatement (Second), Torts § 402A, comment (c). "The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce, not with the specific conduct of the defendant." Wagner v. Clark Equipment, supra, 243 Conn. 195; see also Giglio v. Connecticut Light Power Co., 180 Conn. 230, 234,429 A.2d 486 (1980).
The CPLA provides that "[a] product liability claim . . . may be asserted and shall be in lieu of all other claims againstproduct sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." (Emphasis added.) General Statutes § 52-572n(a). "`Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. . . ." General Statutes § 52-572m(a). The "products liability statute, General Statutes § 52-572n(a) provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." Winslow v. Lewis-Shepard,Inc., 212 Conn. 462, 463, 562 A.2d 517 (1989).
General Statutes § 52-572m(b) states, "`Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. `Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach CT Page 2419 of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." Id. "There is no doubt that the Conn. Gen. Stat. § 52-572m(b), which defines `product liability claim', must be broadly construed in light of the purposes of the statute. . . . order to meet this purpose, it is necessary that the [CPLA] be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce." American Nat.Fire Ins. v. A. Secondino Sons, 832 F. Sup. 40, 42 (D. Conn. 1993); see also Rodia v. Tesco Corp. , 11 Conn. App. 391, 396,527 A.2d 721 (1987).
As a threshold matter, this court must first address whether the prefabricated chimney is a product under the CPLA. The CPLA does not define the term "product". "[T]herefore, the definition of what is a product has been developed entirely by case law."Williams v. McDonald's of Torrington, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 562657, 19 CONN. L. RPTR. 427 (May 8, 1997) (Hale, J.) (holding that the preparation of food by a restaurant constitutes the selling of a product under the CPLA). See also Bobryk v. Lincoln Amusements, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 54708 (January 5, 1996) (Sheldon, J.) (15 CONN. L. RPTR. 617, 619) (defining a product as "any item, thing, or commodity which, upon acquiring its physical existence and identity, through the process of manufacture or otherwise, is put in the stream of commerce either by sale, for use, consumption or resale or by lease or bailment"); Dumitrie v. Fernap, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 288824 (April 25, 1994) (Pittman, J.) (11 CONN. L. RPTR. 449, 450) (adopting the Model Uniform Product Liability Act's definition of a product as "an object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce").
Both defendants rely on case law which states that a home is not a product. See, e.g., Coburn v. Lenox Homes, Inc.,173 Conn. 567, 378 A.2d 599 (1977); Lynn v. Haybuster Mfg., Inc.,226 Conn. 282, 627 A.2d 1288 (1993). Respectively, these cases dealt with issues of breach of warranty and whether a claim for loss of consortium is barred by the Product Liability Act, and are factually distinguishable. CT Page 2420
The issue is not whether a home is a product under the CPLA, but, rather, whether the prefabricated chimney is a product. One trial court has held that component parts of a building may be a product. State v. McGriff, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 349847 (October 19, 1990) (O'Neill, J.) (holding that "although a building affixed to real property is not a product each of its component parts may be; e.g., nails, window glass, shingles, electrical wire, door knobs, etc."). Thus, the prefabricated chimney may constitute a product under the CPLA since it is an item, which through the process of manufacture or otherwise, enters into the stream of commerce.
ii. Whether Brom is a product seller under the CPLA
Brom argues that it is not a product seller under the CPLA because it merely bought supplies (including the prefabricated chimney) and used those supplies to provide the service of building a home.
The Langs argue that a general contractor is liable as a product seller when it sells and installs a prefabricated, mass produced item. Specifically, the Langs argue that since Brom supplied the product, all claims against Brom must be pleaded under the CPLA. The prefabricated chimney was purchased and installed by Brom, and the Langs had no role in the decision of which chimney to install. The Langs further argue that the pre-fabricated chimney was defective[1], because it did not contain any mechanical means of affixing the cap to the clean-out tee to prevent the cap from falling off and allowing sparks and flame to ignite the home, and that the defect caused the fire[2]. The Langs also argue that the chimney is not one that Brom constructed itself, which would be more in the nature of a service, but, rather, Brom is a product seller like any other retailer or distributor because it purchased a mass produced product from a supplier, resold it to a consumer, and installed it.[3] Lastly, the Langs allege that Brom engaged in the business of selling prefabricated chimneys since it purchased the prefabricated chimney and sold it to them when it installed it in their home.
"Whether or not the defendant [is] a product seller is a question of law for the court." Kornblum v. North HavenEnterprises, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 359530 (August 9, 1995) (Hartmere, J.) CT Page 2421 (14 CONN. L. RPTR. 612), citing Burkert v. Petrol Plus ofNaugatuck, Inc., 216 Conn. 65, 72, 579 A.2d 26 (1990).
"To maintain a product liability action under § 52-572m
et seq., the plaintiff must establish and prove, inter alia, that . . . the defendant was engaged in the business of selling the product. . . ." (Emphasis omitted; internal quotation marks omitted.) Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399,403, 528 A.2d 805 (1987). "Once a particular transaction is labeled a `service', as opposed to a `sale' of a `product', it is outside the purview of our product liability statute." Zichichiv. Middlesex Memorial Hospital, supra, 204 Conn. 403 (holding that the transfer of blood by a hospital to a patient is a service and not the sale of a product since, by statute, blood is not considered a commodity but rather a medical service). See also Paul v. McPhee Electrical Contractors, 46 Conn. App. 18, 23,698 A.2d 354 (1997) (holding that an electrician who installed a light fixture was not a product seller under the CPLA since there was no indication that the electrician was "involved in placing light fixtures into the stream of commerce"); Gilbane BuildingCo. v. Stamford Towers, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 118788 (August 31, 1995) (D'Andrea, J.) (holding that a construction manager was not a product seller of allegedly defective precast panels where sufficient facts were not alleged to demonstrate that the construction manager was in the business of selling precast panels); Ferguson v. EBI Medical Systems, Superior Court, judicial district of New London, Docket No. 527663 15 CONN. L. RPTR. 94 (August 1, 1995) (Hurley, J.) (holding that a hospital rendered services, and was not a product seller, where the hospital ordered and installed an allegedly defective wrist fixator during surgery on the plaintiff, since the contract was basically one for the rendition of services and the materials used were merely incidental to the main purpose of the contract); Hines v. JMJConstruction Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 506329 (January 11, 1993) (Miano, J.) (8 CONN. L. RPTR. 232) (holding that a subcontractor who constructed a sidewalk performed services).
Brom relies on Eagen v. Harnischfeger Corp. , Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 074329, 2 CONN. L. RPTR. 662 (November 5, 1990) (Lewis, J.), in which the trial court held that a general contractor was not a product seller. In that case, the trial court stated that the general contractors did not manufacture an overhead crane at issue. "[N]or were they in the CT Page 2422 business of selling cranes, although it appears that in a very limited sense it could be claimed that they sold' the crane to the City of Stamford when the incinerator construction was completed and the building was accepted by the city." In the present case, the Langs argue that Brom sold' the prefabricated chimney to them when it finished construction of the home and thereby `sold' the house to them. However, following the reasoning of the Eagen court, Brom is not engaged in the business of selling prefabricated chimneys.
Similarly, the present case is analogous to Paul v. McPheeElectrical Contractors, supra, 46 Conn. App. 23, which held that an electrician who installed a light fixture was not a product seller. In that case, the court, referring to the definition of a product seller under General Statutes § 52-572m(a), found that the electrician was not a product seller and stated, "[n]owhere is it alleged that the defendant was in the business of selling or leasing light fixtures, or was engaged in the bailment of such light fixtures, or was involved in placing light fixtures into the stream of commerce." Id. In the present case, Brom was not engaged in the business of selling or leasing prefabricated chimneys. As a general contractor, Brom was in the business of constructing homes.
In Hines v. JMJ Construction Co., supra, and Ferguson v. EBIMedical Systems, supra, the trial courts stated that where a contract is basically one for the condition of services, and the materials used are only incidental to the main purpose of the contract, the contract is not one for the sale of goods. In the present case, Brom was hired as the general contractor to provide the service of building the Langs' home, and the materials used to install the chimney were merely incidental to the main purpose of the agreement.
As a matter of law, Brom is not a product seller under the CPLA.
b. The Willises' motion for summary judgment as to count five.
i. Whether the prefabricated chimney is a product under the CPLA.
Like Brom, the Willises argue that a home is not a product. The Langs argue that whether a home is a product is irrelevant, since the issue is whether the prefabricated chimney is a product.
For the reasons stated above, this court finds, as a threshold CT Page 2423 matter, that the prefabricated chimney may constitute a product under the CPLA.
ii. Whether the Willises are product sellers under the CPLA.
The Willises move for summary judgment on the ground that the Langs cannot maintain an action against them under the CPLA since they are not product sellers. The Willises argue that a home is not a product and that they are merely service providers. The Willises maintain that they had no role in purchasing or selling the prefabricated chimney.
In opposition, the Langs argue that the Willises are product sellers under the CPLA. Although the Langs acknowledge in their memorandum in opposition that Brom, rather than the Willises, purchased the prefabricated chimney, they argue, nevertheless, that the Willises are product sellers because they installed a product.
Since general Statutes § 52-572 states that a product liability claim can only be brought against a product seller, and since the Willises, as subcontractors, merely installed the prefabricated chimney, they are not product sellers under the CPLA. Therefore, their motion for summary judgment as to count five must be granted.
 B. Negligence. General Statutes § 52-584. Limitation of action for injury to person or property.
 a. Brom's motion for summary judgment as to count two.
Brom argues that its motion for summary judgment as to count two should be granted because the Langs' negligence claim is time barred by General Statutes § 52-584. The Langs argue that the three year statute of limitations cannot constitutionally be applied to them based on article first, § 10, of the constitution of Connecticut, which provides a right of remedy for injury.
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996). Summary judgment is appropriate on statute of limitations grounds when the "material facts concerning the CT Page 2424 statute of limitations [are] not in dispute. . . ." Burns v.Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984).
In relevant part, General Statutes § 52-584 states, "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . except that no such actionmay be brought more than three years from the date of the act oromission complained of. . . ." (Emphasis added.)
The Langs commenced this action by service of process against Brom on December 29, 1994. As previously stated, it is not disputed that the construction of the home was completed before January 1, 1988.
"It is clear that the repose portion of 52-584 which provides that `no action may be brought more than three years from the date of the act or omission complained of' bars the bringing of suit more than three years after the alleged negligent conduct of a defendant regardless of when a plaintiff discovers the proximate cause of his harm or any other essential element of a negligence cause of action." Catz v. Rubenstein, 201 Conn. 39,49-50, 513 A.2d 98 (1986); see also Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170, 175, 127 A.2d 814 (1956). Although the effect of a statute of limitations is harsh where it bars an action before an injury occurs, "the statute has been so interpreted to permit such a result for over forty years." Nardiv. AA Electronic Security Engineering Inc., 32 Conn. App. 205,211 n. 4, 628 A.2d 991 (1993).
"[T]here is no reason constitutional or otherwise, which prevents the legislature from enacting a statute, such as § 8324 [now § 52-584], which starts the limitation on actions for negligence running from the date of the `act or omission complained of,' even though at that date no person has sustained damage and therefore no cause of action has come into existence. Indeed, such a provision accords with the purposes of statutes of limitation. One purpose is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution." Zapata v. Burns,207 Conn. 496, 508, 542 A.2d 700 (1988).
Therefore, Brom's motion for summary judgment as to count two of the complaint must be granted since the Langs' negligence CT Page 2425 claim is barred by General Statutes § 52-584.
 b. The Willises' motion for summary judgment as to count six of the complaint.
The Willises similarly argue that count six of the Langs' complaint, alleging negligence, is time barred by the statute of limitations set forth in General Statutes § 52-584. In response, the Langs argue that § 52-584 is unconstitutional.
The Willises were cited in as party defendants on January 9, 1996. As previously stated, construction of the home was completed before January 1, 1988.
For the reasons set forth above, the Willises' motion for summary judgment as to count six also will be granted since that count is time barred by General Statutes § 52-584.
C. Breach of Warranty
 a. Brom's motion for summary judgment as to count three.
Brom argues that it's motion for summary judgment as to count three of the Langs' complaint should be granted because the six year statute of limitations set forth in General Statutes §52-576[4] bars the Langs' breach of warranty claim.
The Langs argue that the statute of limitations has not run under § 52-576 because the cause of action accrued when the fire occurred on December 29, 1993, rather than when the prefabricated chimney was installed in 1997.
"[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . [W]hile the application of [this] rule may result in occasional hardship, it is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." (Internal quotation marks omitted).Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 156,464 A.2d 18 (1983) (holding that General Statutes § 52-576 barred a breach of warranty action because injury was inflicted when defendant completed construction on a defective roof more than CT Page 2426 six years before action was commenced). See also Kennedy v.Johns-Manville Sales Corp. , 135 Conn. 176, 180, 62 A.2d 771
(1948) (holding that six year statute of limitations barred breach of warranty action although plaintiff did not become aware of defendant's negligent installation of insulation in the walls of plaintiff's house until more than six years after the negligence occurred).
In accordance with the above cited case law, the Langs' breach of warranty cause of action accrued when the prefabricated chimney was installed prior to January 1, 1988. Since, as noted above, the Langs commenced this action against Brom on December 29, 1994 the action was brought after the six year statute of limitations set forth in General Statute 52-576 had expired. Thus, Brom's motion for summary judgment as to count three must be granted.
 b. The Willises' motion for summary judgment as to count seven.
The Willises similarly argue that count seven of the Langs' complaint alleging breach of warranty is barred by the six year statute of limitations set forth in General Statutes § 52-576. The Langs argue that the statute of limitations has not run under § 52-576 because the cause of action accrued when the fire occurred on December 29, 1993 rather than when the prefabricated chimney was installed in 1997.
As previously noted, the Willises were cited in as party defendants on January 9, 1996; construction of the home was completed before January 1, 1988. Count seven of the Langs' complaint is barred by the six year statute of limitations set forth in General Statutes § 52-576 and therefore, the Willises' motion for summary judgment as to count seven will be granted.
CONCLUSION
Based on the foregoing Brom's motion for summary judgment (#115) will be granted in its entirety. The motion as to count one will be granted since, as a matter of law, Brom is not a product seller under the CPLA. Brom's motion for summary judgment will be granted as to counts two and three, since the Langs' negligence and breach of warranty claims are time barred. CT Page 2427
Similarly, the Willises' motion for summary judgment (#153) will also be granted in its entirety. The Willises' motion as to count five will be granted because the Willises are not product sellers under the CPLA, and their motion will be granted as to counts six and seven because the Langs' negligence and breach of warranty claims are time barred.
So ordered.
Michael Hartmere Judge of the Superior Court