[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Defendants, The Middletown Manufacturing Company, Inc. ("Middletown Manufacturing') and Edward J. Loveland ("Loveland") have moved for summary judgment on the Third and Fourth Counts of plaintiff's complaint, dated January 26, 1999. For the reasons stated below, the court grants the motion.
I. Facts
In pertinent part, the Third Count of the complaint alleges CT Page 723 that, on or about August 10, 1998, Loveland, in his individual capacity, manufactured, produced, sold and distributed metal boxes at Middletown Manufacturing. Id., par. 2. In the course of this activity, Loveland used, heavy equipment/machinery which allegedly seriously injured the plaintiff, Susan Whitehurst ("Whitehurst" or "plaintiff"). Id., pars. 3, 10. Plaintiff alleges that Loveland is legally responsible for "her injuries and damages resulting from the amputation of four fingers caused by defective unreasonably dangerous" equipment, based on claimed violations of Conn. Gen. Stat. §§ 52-572m-52-572r, the Connecticut Product Liability Act ("CPLA"). Id., par. 6. It is further alleged that Loveland employed the use of the equipment/machinery "with the reasonable expectation" that employees of Middletown Manufacturing would operate it and the "causes of action in this complaint arise in part out of the use" of the equipment/machinery "without proper guards and/or covers." Id., par. 7. Plaintiff contends also that Loveland is liable to her for her injuries based on various ways in which the equipment/machinery was defective, was not adequately inspected, and that no warnings and/or instructions were provided to workers. Id., par. 9.
Plaintiff claims damages for the amputations; for pain, suffering, and mental anguish; for medical expenses; for lost earnings; and for diminished enjoyment of her customary life's activities. Id., pars. 10-13.
In the Fourth Count, plaintiff raises the same theories of liability against Middletown Manufacturing, based on the same statutory scheme, Conn. Gen. Stat. §§ 52-572m-52-572r. Id., par 6. Plaintiff asserts that Middletown Manufacturing is legally responsible for her injuries, alleging the same claims concerning defective, unreasonably dangerous equipment/machinery which it was expected would be used by employees. Id., pars. 6-7. The same injuries and damages are the subjects of this Count as were alleged in the Third Count. Complaint, Fourth Count, pars. 10-13.
In support of their motion, the defendants submitted Loveland's affidavit. He states that Middletown Manufacturing is in the business of manufacturing metal boxes. Id., par. 4. Whitehurst was employed as a machinist operator by Middletown Manufacturing. Id., par. 5. Loveland asserts that Whitehurst "allegedly sustained personal injury to her hand while she was operating a Bliss press machine which forms sheet metal into small boxes." Id., par. 6. Further, Loveland avers that "at no time" "was CT Page 724 Middletown Manufacturing in the business of manufacturing or distributing the subject Bliss press machine," id. par. 7, which is manufactured by Bliss. Id., par. 8. Defendants also submitted a photograph of the machine.
In response to the motion, plaintiff submitted an August 27, 1997 letter from Middletown Manufacturing to the U.S. Dept. of Labor, Occupational Safety and Health Administration (OSHA). In that letter, Loveland notes that his company took "corrective action" to abate a cited violation concerning a Bliss power press by "placing a guard over the foot pedal." Plaintiff's Exh. A, annexed to her Memorandum in Opposition. Plaintiff submitted no affidavit or other evidence in connection with the motion.
II. Standard of Review
Practice Book § 17-49 provides that summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Elliott v. City of Waterbury, 245 Conn. 385,391 (1998); Barrett v. Danbury Hospital, 232 Conn. 242, 250
(1995). "The test for summary judgment is whether a party would be entitled to a directed verdict on the same facts." Wilson v.New Haven, 213 Conn. 277, 279-80 (1989); Batick v. Seymour,186 Conn. 632, 647 (1982).
"Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orensteinv. Buckingham Corp., 205 Conn. 572, 574 (1987); Mac's Car City,Inc. v. American National Bank, 205 Conn. 255, 261 (1987)
While the moving party "has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Witt v. St. Vincent'sMedical Center, 52 Conn. App. 699, 702 (1999); Haesche v.Kissner, 229 Conn. 213, 217 (1994). The opposing party must do more than merely assert the existence of a disputed issue of fact.
 "Mere assertions of fact . . . are insufficient to CT Page 725 establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.]" (internal quotation marks omitted) Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984).
Water Way Properties v. Colt's Mfg. Co. Inc., 230 Conn. 660,665 (1994). Summary judgment procedure would be defeated as a whole if the mere assertion that a material factual dispute existed could force a case to trial. Great Country Bank v. Pastore, 241 Conn. 423, 436
(1997).
When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof" Heyman Assoc. No. 1 v. Ins. Co. of Penn.,251 Conn. 756, 796 (1995).
III. DISCUSSION
Middletown Manufacturing and Loveland argue that neither of them can be liable to plaintiff under the CPLA, Conn. Gen. Statutes § 52-572m et seq., since they are not "product sellers" under that statutory scheme. They claim they used the Bliss machine but did not manufacture or sell it. Defts.' Memo. of Law at 4-6.
Plaintiff argues that her Exh. A establishes a material issue of fact since "[d]efendants have involved themselves in the process of manufacturing the Bliss machines. . . ., Memo. In Opp., at 1, and "do use the machine." Id. at 2. Further, she contends that Loveland's affidavit shows that the defendants are "manufacturers" within the statutory scheme. Id.
The doctrine of strict products liability "represents a policy decision that the burden of injuries brought about by a defective product should not be placed upon the individual who uses the product, but, rather, should be borne by the manufacturer or supplier, and thus eventually be spread among the consuming public." Wagner v. Clark Equipment Co., 243 Conn. 168, 194 (1997) ("Wagner"), citing 2 Restatement (Second), Torts 402A, comment (c). "The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce, not with the specific conduct of the defendant."Wagner, 243 Conn. at 195. CT Page 726
The CPLA provides an exclusive remedy. Winslow v.Lewis-Shepard, Inc., 212 Conn. 462, 463 (1989). "A product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn. Gen. Stat. § 52-572n(a). "`Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." Conn. Gen. Stat. § 52-572m(a). A "`[m]anufacturer' includes product sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or component part of a product prior to its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." Conn. Gen. Stat. § 52-572m(e).
§ 52-572m(b) states:
 "Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.
This section "`must be broadly construed in light of the purposes of the statute. . . . In order to meet this purpose it is necessary that the [CPLA] be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce.'" Amer. Nat. Fire Ins. Co. v. A. Secondino Sons, 832 F. Sup. 40, 42 (D. Conn. 1993) (Cabranes, Ch. J.) ("Secondino"), quoting Rodia v. Tesco Corp., 11 Conn. App. 391,396 (1987) ("Rodia").
In reaching a decision on the motion, the court must determine whether either Loveland or Middletown Manufacturing is a "product seller" under the CPLA. This involves a question of law for the court. Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65,72 (1990). CT Page 727
"To maintain a product liability action under § 52-572m et seq., the plaintiff must establish and prove, inter alia, that . . . the defendant was engaged in the business of selling the product. . . ." Zichichi v. Middlesex Memorial Hosp.,204 Conn. 399, 403 (1987) (emphasis omitted; internal quotation marks omitted); Paul v. McPhee Elec. Contractors, 46 Conn. Sup. 18, 23
(1997).
In neither the Third Count nor the Fourth Count is it alleged that Loveland or Middletown Manufacturing manufactured or sold the machine at which plaintiff alleges she was injured. Instead, par. 7 of the Third Count alleges that Loveland "employed the use of said equipment/machinery . . . with the reasonable expectation that said equipment/machinery would be operated by employees. . . ." Likewise, par. 7 of the Fourth Count raises the same allegations as to Middletown Manufacturing. Plaintiff argues that defendants are "part of the component manufacturing of the Bliss machine and do use the machine," citing her Exh. A. Plaintiff's Memo. In Opposition, at 2. As noted, Exh. A states that, on August 26, 1997, an OSHA violation was corrected "by placing a guard over the foot pedal" on the Bliss power press.
Since the action taken to place a guard over the foot pedal occurred after the machine was in use at Middletown Manufacturing, as evidenced by the OSHA inspection referred to in Exh. A, this corrective measure clearly occurred after the machine entered the stream of commerce. Under analogous circumstances, recent cases have held that there can be no liability under the CPLA.
As noted in Rodia, 11 Conn. App. at 396, a repairer who did not put the product into the stream of commerce but who "merely repaired the product after the fact" cannot be liable under the CPLA. Likewise, claims involving repairs "conducted after and apart from the sale and installation of a product. . . ." were found to be outside the scope of the CPLA. Secondino,832 F. Supp. at 42 (emphasis by the Secondino court). In Gonzalez v. AriensCo., 1996 Ct. Sup. 533, 535 (January 25, 1996) (Karazin, J.), a case concerning an accident involving a snowblower, allegations against a repairer were dismissed and summary judgment granted. "The courts are clear that repairs are not covered by the products liability act. . . ." Id. See also, Merz. v. OtisElevator Co., 1993 Ct. Sup. 9029 (September 17, 1993) (Fuller, J.) (allegation concerning repair of elevator after sale was not a products liability claim); Campbell v. Sound Rigging Services,
CT Page 7288 CSCR 680, 1993 Ct. Sup. 5671, 5676 (June 9, 1993) (Arena, J.) (negligent servicing of rigging equipment not encompassed by the products liability statute); Royal Ins. Co. v. Belle Camperland,2 Conn. L. Rptr. 707, 1990 Ct. Sup. 2537 (October 24, 1990) (Mulcahy, J.) (negligence in repairing or servicing recreational vehicle subsequent to sale was not within the scope of the CPLA).
The evidence presented to the court establishes that the product liability statutes cannot afford relief here, since neither defendant was in the business of manufacturing and/or distributing the machine at issue, as defined by the CPLA. They did not sell it. The machine was manufactured by Bliss. Being a product user is not sufficient to sustain a claim under the CPLA. At most, after the machine was placed in the stream of commerce, there is evidence that a corrective measure was employed in connection with its use at defendants' place of business. That does not amount to evidence of a material factual dispute since, under the circumstances, neither defendant was a "product seller" as defined by the CPLA. Defendants are, therefore, entitled to partial summary judgment as a matter of law.
CONCLUSION
Defendants' motion for summary judgment as to the Third and Fourth Counts of the complaint is granted and those counts are dismissed. It is so ordered.
BY THE COURT
Robert B. Shapiro Judge Of The Superior Court