Bertram Harnett, J.
Serum hepatitis is a debilitating, sometimes fatal, disease. Caused by a virus that is carried in the blood, it can be transmitted when a person receives a transfusion from an infected donor. This presents a serious medical problem because an infected donor is sometimes impossible to detect. If his case is mild, he himself might not even know he is sick. There is no known test that can be given to the donor or his blood that can find infection in all cases. Nor is there any known way to purify the blood before transfusion. In short, no matter how carefully all concerned perform, some patients will contract serum hepatitis from transfusions of “bad” blood. Franklyn, Tort Liability For Hepatitis: An Analysis A Proposal, 24 Stanford LR 439.
When a patient is sickened by infected blood, who, if anyone, is liable?
Quite plainly, blood suppliers who furnish infected blood through their own negligent conduct will be liable. But, consider this problem in the context of the emerging theories of implied warranty and of strict liability in tort. The affirmative application of these theories would represent a signal development, for they would result in holding hospital and blood suppliers liable for distributing dangerously defective products regardless of their fault in creating the defects.
While a patient at Doctors Hospital in September 1969, Irving Steinik claims he received “eight transfusions” of blood, some of which were contaminated with hepatitis. He developed hepatitis the following month.
Defendants Pioneer Blood Service, Inc. and Community Blood Bank and Serum Service allegedly supplied the blood to the hospital. Mr. Steinik here sues defendant Doctors Hospital *99 for negligence, breach of implied warranty, and strict liability in tort. He also sues the defendants Pioneer and Community for breach of implied warranties. His wife, Gloria Steinik, sues all three for loss of consortium. On the motions now before the court, all three defendants have moved for summary judgment on certain of these causes of action.
Basically similar in concept, the contract theory of implied warranty and the tort theory of strict liability impose responsibility on a seller for injuries caused by a bad product, no matter how faultless the seller was.
Warranty
When a merchant sells a product, the law implies a warranty that it can be safely used for its ordinary purpose. If, in fact, the properly used product causes injury, the merchant is liable for breach of the implied warranty even if he cannot be shown to have done anything improperly or negligently. (Uniform Commercial Code, § 2-314.)
Strict Tort Liability
The doctrine of strict tort liability holds a seller liable for injuries caused by a defective and unreasonably dangerous product. Liability adheres even when the seller has exercised all possible care in the preparation and sale of his product. (Restatement, Torts 2d, § 402 A.)
But, New York, like most other States, exempts the suppliers of blood for human transfusions, hospitals, and blood banks, from such liability without fault. (Perlmutter v Beth David Hosp., 308 NY 100; Tine v Pioneer Blood Serv., 48 AD2d 692.)
However, both the hospital and the blood bank are responsible for any negligence which may have led to Mr. Steinik’s disease, whether in actual collection, distribution and administration of the blood, or in the selection of the donor population.
The present rule recognizes that human blood is currently incapable of being made totally safe for transfusions. But, its usefulness in saving lives justifies the unavoidable risk. (See Restatement, Torts 2d, § 402 A, Comment k.) Negligent conduct is quite another thing. Within the blood art, the practice and procedures of suppliers must be proper. If the Steiniks can show that his disease resulted from the suppliers’ negli *100 gent or careless practices or procedures rather than the unavoidable risk, they will be able to recover.
Accordingly, summary judgment is granted striking the Steinik claims under strict tort liability or for breach of implied warranty.