LENNY R. ZICHICHI *v.* MIDDLESEX
MEMORIAL HOSPITAL
(13086)

HEALEY, SHEA, CALLAHAN, HURLEY and LEWIS, Js.

Argued May 14—decision released July 14, 1987

*Peter A. Kelly,* for the appellant (plaintiff).
*Michael P. Del Sole,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This is an appeal from the judgment of the trial court granting the defendant Middlesex Memorial Hospital's motion for summary judgment. The issue presented is whether a hospital that furnishes defective blood for transfusion to a patient, who is injured as a result thereof, can be liable under the doctrine of strict liability. This is a question of first impression in this court.

The underlying facts are not in dispute. On November 25, 1981, the plaintiff, Lenny R. Zichichi, instituted a product liability action against the defendant pursuant to General Statutes § 52-572m et seq.[1] In his complaint, the plaintiff alleged that on August 23, 1980, he had been admitted to the defendant hospital for treatment of a ruptured spleen. The plaintiff also alleged that during the course of treatment for that injury, he received several units of whole blood by means of transfusions and that as a result of the transfusions, he contracted serum hepatitis. The plaintiff asserted that part of the normal business of the defendant is the sale and provision of whole blood for the purposes of transfusion to patients and that the blood he had received was defective and unreasonably dangerous. As a result, the plaintiff sought recovery for pain and suffering, loss of income and earning capacity and increased medical expenses.

On May 16, 1986, the defendant filed a motion for summary judgment. In support of its motion, the defendant argued that Connecticut's blood shield stat-

---

[1] General Statutes (Rev. to 1981) § 52-572n provides: "PRODUCT LIABILITY CLAIMS. (a) A product liability claim as provided in sections 31-309, 38-370n, 38-370o, 52-240a, 52-240b, 52-572m to 52-572r, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

"(b) A claim may be asserted successfully under said sections notwithstanding the claimant did not buy the product from or enter into any contractual relationship with the product seller."

ute, General Statutes § 19a-280,[2] bars the plaintiff's product liability action because that statute provides, inter alia, that "blood . . . shall not be considered [a] commodit[y] subject to sale or barter, but shall be considered [a] medical [service]." The defendant argued that to maintain a cause of action under § 52-572m et seq., the plaintiff must allege, inter alia, a "sale of a product." The defendant asserted that because the transfer of blood is a service rather than a sale, it was entitled to judgment as a matter of law.

In opposition to the defendant's motion, the plaintiff argued that § 19a-280 does not apply to claims based on strict liability in tort. The plaintiff argued that § 19a-280 applies only to breach of warranty claims and therefore does not bar his suit.

In a decision dated July 17, 1986, the trial court, holding that under § 19a-280 the transfer of blood cannot be the basis of a product liability action as it is a "service" rather than "a sale of a product," granted the defendant's motion for summary judgment. On July 28, 1986, the plaintiff filed an appeal in the Appellate Court. On January 28, 1987, this court transferred the appeal to itself. Practice Book § 4023.

On appeal, the plaintiff claims that the trial court erred in granting the defendant's motion for summary judgment. Specifically, the plaintiff challenges the trial court's determination that § 19a-280 applies to bar a strict liability claim brought pursuant to § 52-572m et seq.

---

[2] General Statutes § 19a-280 provides: "(Formerly Sec. 19-139*l*). SALE OF BLOOD, TISSUE AND ORGANS. The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma, and the components, derivatives or fractions thereof, or tissue or organs shall not be considered commodities subject to sale or barter, but shall be considered as medical services."

Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] See also *Multi-Service Contractors, Inc.* v. *Vernon,* 193 Conn. 446, 451 n.3, 477 A.2d 653 (1984); *Barnes* v. *Schlein,* 192 Conn. 732, 738, 473 A.2d 1221 (1984); *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 11–12, 459 A.2d 115 (1983). In this case, the defendant, for purposes of its motion for summary judgment, admitted the facts stated in the plaintiff's complaint. The only question before the trial court, therefore, was whether the defendant was "entitled to judgment as a matter of law."

The plaintiff attempted to plead a cause of action based on strict liability in tort, alleging in his complaint that a sale of blood occurred, that part of the defendant's business is selling blood, that the blood reached him without substantial change, that the blood was defective and unreasonably dangerous, and that it caused him injury. See 2 Restatement (Second), Torts § 402A. Because the facts which gave rise to the plaintiff's lawsuit occurred after October 1, 1979, the plaintiff's claim necessarily was brought as a product liability claim pursuant to § 52-572m et seq. *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571, 512 A.2d 893 (1986); see *Savona* v. *General Motors Corporation,* 640 F. Sup. 6 (D. Conn. 1985); *Collucci* v. *Sears, Roebuck & Co.,* 585 F. Sup. 529 (D. Conn. 1984).

---

[3] Although the party seeking summary judgment has the burden of showing the nonexistence of any issue of material fact, the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984).

General Statutes § 52-572m (b) defines a product liability claim as including "all claims or actions brought for personal injury . . . caused by the . . . marketing . . . of any product." Section 52-572n (a) allows such claims to be brought against "product sellers." Section 52-572m (a) defines "product seller," in pertinent part, as "any person or entity . . . who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." To maintain a product liability action under § 52-572m et seq., the plaintiff must establish and prove, inter alia, "that . . . the defendant was engaged in the business of *selling* the product . . . [and] the defect existed at the time of the *sale* . . . ." (Emphasis added.) *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 234, 429 A.2d 486 (1980); *Coe-Park Donuts, Inc.* v. *Robertshaw Controls Co.,* 1 Conn. App. 84, 86, 468 A.2d 292 (1983); 2 Restatement (Second), Torts § 402A. Once a particular transaction is labeled a "service," as opposed to a "sale" of a "product," it is outside the purview of our product liability statute. See General Statutes § 52-572m et seq.; *Coffee* v. *Cutter Biological,* 809 F.2d 191, 193 (2d Cir. 1987) (transfer of blood not a "sale" but a service; therefore, not within purview of § 52-572m et seq.); *Saloomey* v. *Jeppesen & Co.,* 707 F.2d 671, 676–77 (2d Cir. 1983) (navigational charts are products); *Carbone* v. *Connecticut Light & Power Co.,* 40 Conn. Sup. 120, 121–22, 482 A.2d 722 (1984) (provision of electricity not a service but a "sale" of a "product" within the meaning of § 52-572m et seq.); see also *L. Cohen & Co.* v. *Dun & Bradstreet, Inc.,* 629 F. Sup. 1425, 1431 (D. Conn. 1986) (credit report not a "product" within the meaning of § 52-572m et seq.).

General Statutes § 52-572m et seq. does not define the term "product," nor has this court had the opportunity to determine whether the transfer of blood by a hospital to a patient is a "sale" of a "product." In

construing this statute, it is therefore necessary and proper for this court to look to other statutes to determine whether the transfer of blood by a hospital to a patient is a "sale" of a "product." See *Coffee* v. *Cutter Biological,* supra, 195; *Link* v. *Shelton,* 186 Conn. 623, 627, 443 A.2d 902 (1982).

General Statutes § 19a-280, which is entitled "Sale of blood, tissue and organs" and which is referred to as our "blood shield" statute, provides: "The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma, and the components, derivatives or fractions thereof, or tissue or organs *shall not* be considered commodities subject to sale or barter, but *shall* be considered as medical services." (Emphasis added.)

Section 19a-280 clearly states that the transfer of blood shall not be considered a commodity subject to sale or barter, but shall be considered a medical service. Although the parties agree that the wording of § 19a-280 is clear, their respective interpretations of the application of that statute differ dramatically. The plaintiff argues for a narrow interpretation of § 19a-280. The plaintiff maintains that the " 'blood shield' statute was patently designed to apply *only* to breach of warranty actions" brought under the Uniform Commercial Code and that it is "clear" that it "does not address product liability claims." The defendant, on the other hand, advocates a much broader application of the statute and argues that the "legislature has declared that provision of blood is a service, not a sale" for all purposes. The defendant contends that "[s]ince no sale is possible, a transfer of blood [cannot] result in a product liability claim under § 52-572m." The question before this court, therefore, is whether the transfer of

blood can be considered a "sale" for purposes of a product liability claim under § 52-572m et seq.

We agree with the trial court that under § 19a-280 the plaintiff is precluded from asserting a product liability claim arising out of the transfer of blood by a hospital to a patient. "Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court . . . ." *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980). Under our rules of statutory construction, this court is to be guided by the language, purpose and legislative history of the statute in question. *Caulkins* v. *Petrillo,* 200 Conn. 713, 716–17, 513 A.2d 43 (1986). Although § 19a-280 does not use the term "product," the plain and unambiguous wording of that statute provides that the provision of blood is to be considered a medical *service* not a *sale.* "The title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . ." (Citations omitted.) *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974). The title of this bill was "An Act Concerning Furnishing Blood and Tissue as a Medical *Service."* (Emphasis added.) Additionally, Senate Bill No. 885, which was passed as Public Acts 1971, No. 397, and ultimately codified as § 19a-280, contains the following statement of purpose: "The furnishing of blood, blood plasma or tissue is a medical service and should not be construed in the same manner as the sale of ordinary merchandise." The statement of purpose of a bill may be considered in determining its intent. *Seals* v. *Hickey,* 186 Conn. 337, 345, 441 A.2d 604 (1982); *Miller* v. *Board of Education,* supra. In light of this statement of purpose, it is indicated that the legislature intended to treat blood and blood derivatives differently from other "products." Without the factual predicate of a "sale" of a "product," the plaintiff has no basis for asserting a claim under § 52-572m et seq.

In support of his claim that § 19a-280 applies only to breach of warranty claims, the plaintiff relies heavily on *DeBattista* v. *Argonaut-Southwest Ins. Co.*, 403 So. 2d 26 (La. 1981), cert. denied, 459 U.S. 836, 103 S. Ct. 82, 74 L. Ed. 2d 78 (1982). In that case, the Louisiana Supreme Court held that a strict liability claim could be asserted despite a provision in its commercial code which provided: "Notwithstanding the provisions of Section A 2 of this Article, the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma, or other human tissue or organs . . . . Such blood, blood plasma or tissue or organs shall not *for the purposes of this Article* be considered commodities subject to sale or barter but shall be considered as medical services." (Emphasis added.) La. Civ. Code Ann. art. 1764 (B) (1) (West 1972 Comp. Ed.). Although, at first blush, this statute appears to be identical to § 19a-280, there are important differences between the two statutes.

The first difference between the two statutes is that the Louisiana statute is expressly self-limiting while § 19a-280 is not. The Louisiana statute is contained in the sales article of the Louisiana civil code. Thus, by using the terms "for the purposes of this Article," the Louisiana legislature expressly limited the application of the statute to the area of sales contracts. By contrast, § 19a-280 is not limited to any particular type of transaction. Additionally, § 19a-280 is part of title 19a, entitled "Public Health and Well-Being" and contained in chapter 368*l*, entitled "Anatomical Donations." As the defendant correctly points out in its brief, there is no specific indication that the legislature intended to limit the statute to situations involving the Uniform Commercial Code, General Statutes § 42a-1-101 et seq. Indeed, had the legislature intended to limit § 19a-280 to Uniform Commercial Code transactions, it could eas-

ily have included that statute as a subsection of General Statutes § 42a-2-316. Cf. La. Civ. Code Ann. art. 1764 (B) (1) (West 1972 Comp. Ed.);[4] Tenn. Code Ann. § 47-2-316 (5).[5] Furthermore, the plaintiff's interpretation of § 19a-280 would render the second sentence of that statute a useless repetition of the first sentence. "There is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment so that in construing it no part is treated as insignificant and unnecessary." *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980); *Peck* v. *Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985).

Although our conclusion that § 19a-280 precludes the plaintiff from bringing a claim based on strict liability in tort arising out of the transfer of blood is necessarily based on the construction of our statutes, we note that this conclusion is consistent with the view adopted in other jurisdictions. Nearly every state has a statute which regulates the transfer of blood and its derivatives, and all of these statutes, in one way or another,

---

[4] We note that after *DeBattista* v. *Argonaut-Southwest Ins. Co.,* 403 So. 2d 26 (La. 1981), the Louisiana legislature enacted La. Rev. Stat. Ann. § 9:2797 which granted physicians, hospitals and blood banks immunity from strict tort liability for screening, processing, transfusion or medical use of blood and blood components of any kind which result in transmission of viral disease undetectable by appropriate medical and scientific laboratory tests. See *Faucheaux* v. *Alton Ochsner Medical Foundation Hospital & Clinic,* 470 So. 2d 878 (La. 1985).

[5] Tenn. Code Ann. § 47-2-316 (5), which is included in that state's Uniform Commercial Code, provides: "The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as corneas, bones, or organs), whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service."

Interestingly, two courts have decided that this section precludes an action sounding in strict liability in tort. *Sawyer* v. *Methodist Hospital,* 522 F.2d 1102, 1105 (6th Cir. 1975); *St. Martin* v. *Doty,* 493 S.W.2d 95, 97 (Tenn. App. 1972).

attempt to limit liability. While the wording of the various "blood shield" statutes varies, courts construing these statutes uniformly hold that they constitute a complete bar to any action based on strict liability. See, e.g., *Samuels* v. *Health & Hospital Corporation,* 591 F.2d 195, 197 (2d Cir. 1979) (construing New York law); *Sawyer* v. *Methodist Hospital,* 522 F.2d 1102, 1105 (6th Cir. 1975) (construing Tennessee law); *Hyland Therapeutics* v. *Superior Court,* 175 Cal. App. 3d 509, 513–14, 220 Cal. Rptr. 590 (1985); *Fogo* v. *Cutter Laboratories, Inc.,* 68 Cal. App. 3d 744, 754, 137 Cal. Rptr. 417 (1977); *Klaus* v. *Alameda-Contra Costa Medical Assn. Blood Bank, Inc.,* 62 Cal. App. 3d 417, 418–20, 133 Cal. Rptr. 92 (1976); *Shepard* v. *Alexian Brothers Hospital,* 33 Cal. App. 3d 606, 611, 109 Cal. Rptr. 132 (1973); *Williamson* v. *Memorial Hospital of Bay County,* 307 So. 2d 199, 201 (Fla. App. 1975); *McAllister* v. *American National Red Cross,* 240 Ga. 246, 247–48, 240 S.E.2d 247 (1977); *Hill* v. *Jackson Park Hospital,* 39 Ill. App. 3d 223, 225, 349 N.E.2d 541 (1976); *Glass* v. *Ingalls Memorial Hospital,* 32 Ill. App. 3d 237, 238–39, 336 N.E.2d 495 (1975); *McKinstrie* v. *Henry Ford Hospital,* 55 Mich. App. 659, 661, 223 N.W.2d 114 (1974); *Iannucci* v. *Yonkers General Hospital,* 59 App. Div. 2d 887, 399 N.Y.S.2d 39 (1977); *Morse* v. *Riverside Hospital,* 44 Ohio App. 2d 422, 427, 339 N.E.2d 846 (1974); *Gilmore* v. *St. Anthony Hospital,* 516 P.2d 248, 251 (Okla. 1973); *St. Martin* v. *Doty,* 493 S.W.2d 95, 97 (Tenn. App. 1972); *Garvey* v. *St. Elizabeth Hospital,* 103 Wash. 2d 756, 758, 697 P.2d 248 (1985); see also annot., 24 A.L.R.4th 508, 519–22 (1983), and cases cited therein; but see *DeBattista* v. *Argonaut-Southwest Ins. Co.,* supra. Additionally, courts in some jurisdictions, even without the benefit of a statute, have recognized the inherent policy concerns and have held that a blood transfusion is a "service" rather than a "sale" of a "product." See, e.g.,

*St. Luke's Hospital* v. *Schmaltz,* 188 Colo. 353, 534 P.2d 781 (1975);[6] *Fisher* v. *Sibley Memorial Hospital,* 403 A.2d 1130 (D.C. App. 1979).

Our conclusion is also consistent with policy behind the enactment of the blood shield statute. Although the legislative history of § 19a-280 is virtually nonexistent, one of the driving forces behind the promulgation of "blood shield" statutes, such as § 19a-280, is to ensure that certain medical services, namely, the provision of blood and tissue, remain available to citizens in need of such services. See generally comment, "Blood Transfusions and the Transmission of Serum Hepatitis: The Need for Statutory Reform," 24 Am. U. L. Rev. 367 (1975). As one court aptly stated, "[t]he public policy represented by these statutes is not difficult to discern: blood transfusions are essential in the medical area and there are not now, and realistically there may never be, tests which can guarantee with absolute certainty that the donated blood is uncontaminated with certain viruses." *Garvey* v. *St. Elizabeth Hospital,* supra, 759. These statutes reflect a legislative judgment that to require providers to serve as insurers of the safety of these materials might impose such an overwhelming burden as to discourage the gathering and distribution of blood. To ensure that such services remain adequate and affordable, legislatures have chosen to limit liability to defects that are the result of negligence, thus bringing the provision of such services necessary for medical treatment into the same category as the provision of other medical services.

Despite the plaintiff's assertion to the contrary in his invocation of the constitution of Connecticut, article

---

[6] In 1971, the Colorado legislature enacted § 13-22-104 of the Colorado Revised Statutes. This "statute attempts to preclude the use of any non-fault theory of recovery in any blood transfusion case against any defendant." *Belle Bonfils Memorial Blood Bank* v. *Hansen,* 195 Colo. 529, 530 n.1, 579 P.2d 1158 (1978).

first, § 10, our construction of § 19a-280 does not leave a person injured as a result of defective blood completely without recourse to the courts. Section 19a-280 does not protect defendants from liability for negligence. The delivery of a service, such as providing a blood transfusion, requires the provider of that service to exercise reasonable care to avoid injury to the consumer of the service. If a plaintiff can show that the defect in the blood could reasonably have been detected or removed, the plaintiff may well be entitled to recover for the supplier's negligent failure to detect or remove the defect. See *Steinik* v. *Doctors Hospital,* 82 Misc. 2d 97, 98, 368 N.Y.S.2d 767 (1975); *Hines* v. *St. Joseph's Hospital,* 86 N.M. 763, 765, 527 P.2d 1075 (1974); *Morse* v. *Riverside Hospital,* supra; *St. Martin* v. *Doty,* supra.

We conclude, therefore, that the trial court did not err in granting the defendant's motion for summary judgment.

There is no error.

In this opinion the other justices concurred.