[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the defendant Pawtuxet Valley Prescription and Surgical has moved to strike the second count which alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA) on the grounds that such claim is "barred by the exclusivity of the Connecticut Products Liability Act, in particular, C.G.S. § 52-572n."
Section 52-572n at subsection (a) states in relevant part that, "A product liability claim. . . . may be asserted and shall be in lieu of all other claims against product sellers including actions of negligence, strict liability and warranty for harm caused by a product."
In this case, the plaintiff was injured while operating a motorized wheelchair which was manufactured by the defendant. The claim is made that due to the negligent design and manufacture of the product, the plaintiff was caused to be thrown from the wheelchair striking her head. As noted, the plaintiff has filed a claim in the first count against defendant under the Product Liability Act § 52-572n et seq and a second count under CUTPA.
The standards to be applied in a motion to strike are well-known. Every favorable inference must be given to the complaint which is subject to attack. Amodio v. Cunningham, 182 Conn. 80, 82 (1980).
The initial fifteen paragraphs of the first or products liability count set forth the factual background as to how the accident happened. The following paragraphs make the following allegations against the defendant; which is said to have designed, manufactured and distributed the wheelchair:
4. (The defendant) held itself out to the plaintiff, as well as the public at large, as providers of motorized wheelchairs that were a safe means of transportation and that were suited for their intended purpose. CT Page 14265
 5. At all times (the defendant) represented to the plaintiff that the motorized wheelchair sold and/or rented were a safe means of transportation and free of any and all defects.
The seventh paragraph goes on to say that the plaintiff relied upon the defendant's "judgment with regard to inspecting, repairing and/or maintaining its vehicles to ensure the safety of the wheelchair and "relied upon a warranty implied by law that the scooters . . . were reasonably fit for the purpose of being operated without causing an unnecessary risk of injury." Paragraph 12 then states when the plaintiff attempted to ascend a ramp her wheelchair tilted and flipped over and off the ramp. It is then alleged that:
 13. At all times relevant, the vehicle produced, distributed, sold and/or rented by (the defendant) was not equipped with the necessary safety mechanism to prevent the wheelchair from tipping when operated on an incline.
. . . .
 15. At all times (the defendant) was and continues to be responsible for instituting and enforcing the safety procedures that are necessary to ensure the wheelchairs do not reach consumers in a defective and dangerous condition. Specifically, (the defendant) was under a duty to ensure that each vehicle was equipped with a mechanism to prevent the product from tipping when operated on steep angles."
 The sixteenth paragraph of the products liability count then sets forth a variety of claims for physical, emotional and mental injuries.
 The second count, which is the subject of this motion, makes a CUTPA claim and incorporates the first fifteen paragraphs of the first count.
The following is then alleged:
 16. At all times relevant, the wheelchair operated by plaintiff which was produced, distributed, sold and/or rented by defendant Pawtuxet Valley was defective and unreasonably dangerous.
17. At all times relevant, the agents, servants and/or employees of defendant Pawtuxet Valley failed to warn plaintiff of the defective nature of the product, misrepresented the quality of its product and failed to take the necessary preventative measures to prevent the production, distribution and/or sale of a defective product prior to CT Page 14266 aggressively marketing the fitness and quality of its product to the general public.
 18. The aforementioned acts and omissions of defendant Pawtuxet Valley constitute an unfair and deceptive act and caused and will continue to cause unjustifiable injury to consumer, including plaintiff.
The twentieth and final paragraph alleges that as a result of a CUTPA violation, the "plaintiff suffered the losses and damages as outlined above," apparently referring to the damage allegations of paragraph 16 of the first products liability count.
The question presented then is whether the second count under CUTPA is precluded by the exclusivity provision of the Products Liability Act set forth in subparagraph (a) of § 52-572n.
The problem must be analyzed against the background of Connecticut pleading practice. Under that practice, a plaintiff can plead alternative and even inconsistent theories of liability against one or more defendants. Sharp v. Wyatt, Inc., 31 Conn. App. 824, 844 (1993), cf. P.B. § 10-25. Neither is there anything peculiar to a claim sounding in product liability which would preclude an assertion in the same suit of a violation of a statutory consumer protection statute. For example, Massachusetts does not appear to have a codified products liability law with an exclusivity provision; product liability actions are brought based on traditional common law claims such as negligence, strict liability, breach of warranty. That state does, however, have a consumer protection act set forth in Chapter 93a of the Annotated Laws of Massachusetts. That act defines unfair and deceptive trade practices in Section 2 in language almost exactly like § 42-110b (a) of CUTPA.
In Massachusetts, a party can bring an action alleging a common law theory of product liability and a violation of that state's Consumer Protection Act, see Burnham v. Mark IV Homes, Inc., 441 N.E.2d 1027, 1031
(Mass., 1982) (pursuant to authority granted by statute Attorney General has declared that the breach of an implied warranty of merchantability is an unfair and deceptive trade practice under Chapter 93A § 2). Also see Massachusetts Practice, Bishop 4th ed., vol. 17A, § 902, pp. 132-133.
But we are in Connecticut and the problem presented for parties, like the plaintiff, seeking to proceed under our Products Liability Act and CUTPA is the language of § 52-572n (a), the so-called exclusivity provision: CT Page 14267
 "(a) A product liability claim... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."
Some courts, even quite early on after the passage of the act, have held that the exclusivity provision only applies to common law actions not statutory claims such as CUTPA, see Collier v. Bridgehaven TruckSales, Inc., 2 CSCR 886 (1987)[1] This argument can be arguably made in light of the fact that the "in lieu of all other claims" language in the exclusivity provision is followed by a list of only common law actions and CUTPA was in the statutory scheme when our Product Liability Act was adopted but is not mentioned. But this is a difficult argument to make in light of the broad language used in § 52-572n (a), but also because the manner in which a "product liability claim" is defined in § 52-572m
(b).
 "(b) `Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing warnings, instructions, marketing, packaging or labeling of any product.
 `Product liability claim' shall include, but is not limited to, all actions based on the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." (Emphasis added.)
In light of the emphasized language, it seems clear that a product liability claim could include common law claims as listed, but could also include claims made under other ameliorative statutes, like CUTPA. Admittedly Winslow v. Lewis-Shepard, Inc., 212 Conn. 462 (1989), held that the product liability act was the "exclusive remedy for claims falling within its scope" and in so ruling only ruled that common law counts of product liability must be stricken, id. p. 471. But the legislative history the case quotes is indicative of a purpose to simplify the complex pleading practice for asserting such claims — that purpose would also be furthered by holding that all separate claims, common law and statutory, falling within the scope of the Product Liability Act are barred. As said in Utica Mutual Ins. Co. v. DenwatCorp., 778 F. Sup. 592 (D.Conn., 1991). "The purpose behind the act is to merge the numerous causes of action and to create one statutory cause of action embracing the various theories of liability," id. pp. 596-597. CT Page 14268 Given the purpose sought to be achieved by the exclusivity provision, it is difficult to understand how that goal would not be further enhanced by saying that CUTPA claims falling within the ambit of the Product Liability Act (PLA) is not also barred. In fact, given that purpose what can be the rational reason for a position that held the exclusivity provision of the PLA only applies to common law claims, but not a CUTPA claim raising allegations within the ambit of the PLA? Nothing in the broad language of §§ 52-572n (a) or 52-572m (b) precludes barring a CUTPA claim under such circumstances.
To say, as some cases have at the Superior Court level, that no CUTPA claim is barred because the purposes of the two acts is different, at least to the court, misses the mark. True, CUTPA deals with unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce causing harm not only to competitors but also of course to consumers; and the PLA addresses harm caused by a product. But the PLA in § 52-572m (b) permits actions under its auspices sounding in not only negligence, but also in breach of warranty and misrepresentation, for example, which necessarily involve a product under the terms of the act causing harm to the consumer. As long as harm caused by the product is the common nexus. imposing liability under either statute will have the same effect on the wrongdoing manufacturer or distributor — a recovery for the wronged party and hopefully an incentive to change their ways so as to protect the consumer public.[2]
So to have a statutory scheme saying under these circumstances a PLA and CUTPA action cannot be brought will not undermine the ameliorative aims of CUTPA.
The question really is how to enforce the purposes behind the exclusivity provision of the PLA without unfairly limiting the operation of CUTPA and its broad ameliorative purposes? The solution has been one first formulated by Judge Nevas and adopted by the majority of Superior Courts. See West Haven School District v. Owens-Corning, 1988 WL 250851
(Nevas, Jr., D.Conn.). That test is set forth in Khongdy v. Die-QuipCorp., 11 Conn.L.Rptr. 628 (1994, Stanley, J.).
 "Some of the more recent and more persuasive decisions employ a `functional analysis' to determine the propriety of a CUTPA claim simultaneously with a claim pursuant to the CPLA. . . . Under this functional analysis, the CPLA is viewed as precluding "any claim that is basically coextensive with or functionally equivalent to a simultaneously plead product liability claim.'"
CT Page 14269
What this really seems to mean is that given its purposes a CUTPA count coupled with a PLA claim should not be stricken if it covers parties not subject to the PLA or seeks relief not provided for by that act. The manner in which a court should approach a motion to strike in this setting has been clearly stated in an article in the Bar Journal authored by Attorneys Tropp and Rotondo and certainly cannot be improved on by the court and previously referred to.
The authors give an example of their position which is relevant to the problem before the court in this case. Talking of the type of case where a CUTPA claim would be barred if a PLA claim is made, the authors say:
 "Assume a product seller misrepresents the safety of his product in an advertisement, inducing a consumer to buy the product, and personal injury results. The harm caused by the unfair trade practice is measured by the harm caused by the product. There is no separable consumer injury involving a distinct `ascertainable loss.'
 Further, in order for the plaintiff to prove that he was injured by misrepresentations regarding the safety of the product, he must necessarily prove that the product was defective; i.e., did not live up to the representations regarding safety. Otherwise, there would be no misrepresentation. Equally important, he must also prove that the misrepresentations caused his injuries. As the Connecticut Supreme Court held in Haesche v. Kissner, if a plaintiff cannot prove that the product caused him harm, he cannot prove that the alleged unfair trade practices caused him harm. Concrete harm — an `ascertainable loss' — must be proved. Therefore, recovery under CUTPA cannot [be] achieved unless a remedy is also available under the PLA.' 70 Conn. Bar Journal at pp. 349-351. (Tropp and Rotondo)
But this type of analysis does not mean that there are no circumstances in which a CUTPA claim cannot be joined with a PLA claim. As suggested in the Bar Journal Article, the just quoted reasoning does not weaken the purposes of CUTPA since functionally equivalent claims can be advanced under the PLA and a broad variety of theories of recovery, not viable under the PLA could still be brought under CUTPA. Thus, common law or statutory claims beyond the scope of the PLA can be asserted against those who are not product sellers, cf. Burkett v. Petrol Plus ofNaugatuck, Inc., 216 Conn. 65, 73 (1990). Also see State of Conn. v.McGriff, et al, 4 CSCR 609 (1989), and also claims for commercial loss would fall outside the scope of the PLA and can be brought under CUTPA in tandem with a PLA claim, Mechtronics v. ECM Motors Co., (U.S. District Court, D.Conn. at Bridgeport, B9000253 (1990), see Palmieri v. HiWayCampers, Inc., 13 Conn.L.Rptr. 535 (1995). Also so-called conduct cases CT Page 14270 involving faulty repair or service claims are not barred. Thus, CUTPA "claims addressed to negligent repairs and service performed after the product was placed in the stream of commerce are not covered [by the PLA] — and, hence, not barred — by the [PLA], American NationalFire Ins. Co. v. A. Secondino Sons, 832 F. Sup. 40, 42 (D.Conn., 1993); also see Zichicki v. Middlesex Memorial Hospital, 204 Conn. 399,403 (1987), and other cases cited in Palmieri v. HiWay Campers, Inc., supra.
Applying these observations and the functional equivalency test to the case now before the court, it is clear that the CUTPA count seeks damages for personal injuries, not commercial loss and that harm was caused by the product, here a wheelchair. Proof that injury by misrepresentation occurred, as alleged in this complaint, necessarily requires proof that the product was defective. In other words, the injury claim was caused, allegedly, by a manufacturer's product and resulted in part from failure to give appropriate warnings and misrepresentations as to that product, see paragraph 17 of second (CUTPA) count and compare § 52-572m (b), which indicates all such claims made in the context of a case such as this fall within the ambit of the PLA.[3] Under CUTPA, the plaintiff would have to prove her injuries were caused by failure to give warning or misrepresentation. Thus, "recovery under CUTPA cannot be achieved unless a remedy is also available under the PLA," Tropp and Rotondo articles at 70 Conn. Bar Journal, p. 351.
For the foregoing reasons, the motion to strike the second count is granted.
 ___________________ Corradino, J.