[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE (#115)
The plaintiff brings this complaint in his capacity as the administrator of the estate of his deceased mother, Donna Marie Altieri. The complaint alleges that on or about June 14, 2001, Ms. Altieri presented a prescription for opium tincture camphorated to a CVS Pharmacy located at 310 Main Street in Southington, Connecticut. Instead of properly filling the prescription, the defendants allegedly misfilled the prescription with opium tincture, which contains a substantially higher concentration of morphine than opium tincture camphorated. Ms. Altieri died on June 15, 2001.
The plaintiff in his amended complaint filed October 21, 2002, sets forth the following counts: first count against the defendant CVS Pharmacy, Inc., for pharmaceutical negligence pursuant to General Statutes § 52-555; second count against the defendant CVS Pharmacy, Inc. for wanton and reckless misconduct pursuant to General Statutes § 52-555; third count against the defendant CVS Pharmacy, Inc. under Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §42-110a et seq; fourth count against the defendant Shyloe Vecchio for professional negligence (the defendant Shyloe Vecchio was a pharmacist employed by the defendant CVS at the 310 Main Street store in Southington); fifth count against the defendant Southington Main Street CVS, Inc. for pharmaceutical negligence; sixth count against the defendant Southington Main Street CVS, Inc. for wanton and reckless misconduct; seventh count against the defendant Southington Main Street CVS, Inc. under the Connecticut Product Liability Act, General Statutes § 52-572m et seq; eighth count against the defendant Southington Main Street CVS, Inc. under CUTPA; ninth count against the defendant CVS Rx Services, Inc. for pharmaceutical negligence (the defendant CVS Rx Services, Inc. employs the pharmacists at CVS Pharmacies, while the defendant Southington Main Street CVS, Inc. employed the pharmacy technicians and other staff who worked at the 310 Main Street CVS CT Page 15991 Pharmacy in Southington); tenth count against defendant CVS Rx Services, Inc. for wanton and reckless misconduct; eleventh count against CVS Rx Services, Inc. under CUTPA; and a twelfth count against defendant CVS Rx Services, Inc., for professional negligence.
The defendants CVS Pharmacy, Inc., Southington Main Street CVS, Inc. and CVS Rx Services, Inc. have by motion filed on October 31, 2002, moved to strike the second, third, sixth, seventh, eighth, tenth and eleventh counts of the amended complaint, along with the portions of the prayer for relief corresponding to such counts. The plaintiff has opposed the motion to strike.
The motion argues that the second, sixth and tenth counts, which set forth causes of action for recklessness against each of the defendants, are legally insufficient because they assert only conclusory allegations of recklessness, and merely repeat the allegations of negligence.
The motion seeks to have the CUTPA claims (third, eighth and eleventh counts) stricken on the ground that these claims cannot be based solely on allegations of professional negligence, and otherwise the allegations contained in the third, eighth and eleventh counts fail to conform with the "cigarette rule."
The defendant Southington Main Street CVS (Southington) seeks to have the seventh count stricken on the ground that it characterized its pharmacy function as the provision of a service, rather than as the sale of a product within the meaning of the product liability act. The motion by this defendant also argues that the complaint does not sufficiently allege the existence of a product defect.
Southington also argues and the plaintiff concedes that if the court denies the motion to strike the product liability claim, then it must strike the other claims against Southington because the products liability act provides an exclusive remedy. The plaintiff contends, however, that the CUTPA claim would not be subsumed by the product liability count.
The function of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a) (5). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . ." (Citations omitted; emphasis omitted). Mingachos v.CVS, Inc., 196 Conn. 91, 108, 498 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted). NovametrixCT Page 15992Medical Systems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "The role of the trial court is to examine the pleadings and construe the allegations in the light most favorable to the pleader in order to determine whether the pleader has stated a legally sufficient cause of action or defense." ATC Partnership v. Windham, 251 Conn. 597,603, 741 A.2d 305, cert. denied, 530 U.S. 1214, 120 S.Ct. 2217,147 L.Ed.2d 249 (1999)
I. Counts Based on Recklessness
The plaintiff correctly points out that the second, sixth and tenth counts, which allege reckless conduct against the respective corporate defendants, do not merely repeat the negligence allegations of the first, fifth and ninth counts. In the second count, paragraph 11, subsection a, the plaintiff's allegations include death as a specific significant danger associated with the misfilling of this prescription, of which the defendants had prior notice. The reckless counts also differ from the negligence counts by their inclusion at paragraph 11, subsection b, which adds the word "numerous" to the reference to the number of prior misfilled prescriptions. Viewing the facts alleged in the light most favorable to the plaintiff, if the plaintiff were to demonstrate numerous misfilled prescriptions of which the defendants had prior knowledge, and deaths resulting from such misfilled prescriptions, then such conduct could meet the legal standard of reckless conduct. Dubay v. Irish,207 Conn. 518, 532, 542 A.2d 711 (1988); Bishop v. Kelly, 206 Conn. 608,614-15, 539 A.2d 108 (1988); Begley v. Kohl Madden Printing, Inc.Co., 157 Conn. 445, 450-51 254 A.2d 907 (1969). The motion to strike is denied with respect to the second, sixth and tenth counts.
II. Products Liability Act Claim Against Southington
Southington seeks to have the products liability claim (seventh count) stricken on the basis that filling a prescription is a service and not the sale of a product as required by Connecticut product liability law. See Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 214, 694 A.2d 1319
(1997). Southington cites as authority the Connecticut Supreme Court decision in the Zichichi v. Middlesex Memorial Hospital, 204 Conn. 399,528 A.2d 805 (1987) and the Supreme Court of California decision inMurphy v. E.R. Squibb Sons, Inc., 40 Cal.3d 672, 710 P.2d 247
(1985).
The Zichichi decision is instructive but not controlling because it was based on application of the Connecticut "blood shield" statute, General Statutes § 19a-280, which provides as follows: "The implied warranties of merchantability and fitness shall not be applicable to a CT Page 15993 contract for the sale of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir, such other tissues or organs. Such blood, blood plasma and the components, derivatives or a fraction thereof, or tissues of organs shall not be considered commodities subject to sale or barter, but shall be considered as medical services." The rationale for the "blood shield" statute was noted in the Zichichi as follows:
 One of the driving forces behind the promulgation of `blood shield' statutes . . . is to ensure that certain medical services, namely, the provision of blood and tissue, remain available to citizens in need of such services. . . . These statutes reflect a legislative judgment that to require providers to serve as insurers of the safety of these materials might impose such an overwhelming [burden] as to discourage the gathering and distribution of blood. To ensure that such services remain adequate and affordable, legislatures have chosen to limit liability to defects that are a result of negligence, thus bringing the provision of such services necessary for medical treatment into the same category as the provision of other medical services.
Zichichi v. Middlesex Memorial Hospital, supra, 204 Conn. 409.
Murphy v. E.R. Squibb Sons, Inc., supra, 40 Cal.3d 672, is more comparable to what must be decided in this case because it specifically finds that a pharmacy may not be held strictly liable for dispensing a prescription drug on the basis that a pharmacist dispensing a prescription drug is primarily furnishing a service rather than selling a product. Id., 680. The rationale for that conclusion is set forth at40 Cal.3d 678-79:
 [T]he pharmacist is engaged in a hybrid enterprise, combining the performance of services and the sale of prescription drugs. It is pure hyperbole to suggest, as does plaintiff, that the role of a pharmacist is similar to that of a clerk in an ordinary retail store. With a few exceptions, only a licensed pharmacist may dispense prescription drugs, and as indicated above there are stringent educational and professional requirements for obtaining and retaining a license. A pharmacist must not only use skill and care in accurately filling and labeling a prescribed CT Page 15994 drug, but he must be aware of problems regarding the medication, and on occasion he provides doctors as well as patients with advice regarding such problems. In counseling patients, he imparts the same kind of information as would a medical doctor would about the effects of the drugs prescribed. A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. In this respect, he is providing a service to the doctor in acting as an extension to the doctor in the same sense as a technician who takes an x-ray or analyses a blood sample on a doctor's order.
Id.
The plaintiff argues that the Murphy decision is distinguishable because the underlying facts involve a pharmacy that sold a properly compounded and properly labeled prescription drug, unlike the plaintiff's decedent, who received the wrong drug in the wrong dosage. The court does not read Murphy as so restrictive in application. The scenario involving a properly compounded and properly labeled prescription drug addresses a strict liability concern implicated by product liability law. In this case, the facts describe what is clearly a negligence claim, which is properly dealt with in the counts asserting negligence.
Murphy further notes that pharmaceutical services are similar to blood or plasma distribution, and as such, are clearly a service. The Murphy
court observed that from a comparative functional aspect, pharmacy is more aptly characterized as performance of a service, rather than as a manufacture and sale of a blood product. Id., 679-80.
The court finds that Southington was engaged in a service when filling a prescription, and therefore is not subject to the product liability act. The seventh count is stricken.
III. CUTPA Claims
The substance of the plaintiff's CUTPA claims is contained in paragraphs 12 and 13 of the third, eighth and eleventh counts, alleging that:
 (12) This misfilled prescription, and plaintiff's decedents' subsequent death, occurred because of the CT Page 15995 defendant's unfair and deceptive acts and/or practices in the conduct of its trade and commerce in violation of C.G.S. 42-110a et seq, and specifically in that: a) It continuously failed to implement and maintain appropriate systems and safe pharmaceutical practices, policies and procedures to avoid the misfilling of prescriptions, and the misfilling of this prescription in particular despite prior notice of the significant dangers, including death, associated with the misfilling of this prescription, and b) It continuously failed to implement and maintain appropriate systems and safe pharmaceutical practices, policies and procedures to avoid the misfilling of prescriptions and the misfilling of prescriptions, and the misfilling of this prescription in particular despite the occurrence of numerous prior misfilled prescriptions.
 (13) the continued failure by this defendant to implement appropriate safety systems to prevent the distribution of potentially dangerous, and even fatal, misfilled prescriptions is deceptive and unfair to the consuming public, and plaintiff's decedent in particular, who rely on this defendant to dispense the medication which it claims to be dispensing.
The general rule in Connecticut is that professional negligence of a health care provider does not fall within the purview of CUTPA. Haynesv. Yale-New Haven Hospital, 243 Conn. 17, 34, 699 A.2d 964 (1997). TheHaynes decision indicates that "the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation." Id, 38.
In the instant case, the allegations are that the defendants misfilled the prescription and "failed to implement and maintain appropriate systems and safe pharmaceutical practices, policies and procedures to avoid the misfilling." The allegations sound in professional negligence and do not implicate the "entrepreneurial aspects" of the business of pharmacies.
In Sherwood v. Danbury Hospital, 252 Conn. 193, 213-14, 746 A.2d 730
CT Page 15996 (2000), our Supreme Court determined that where the hospital failed to implement proper rules, regulations and quality assurance programs, such allegations did not relate to entrepreneurial aspects of the hospital.
In upholding a trial court's direction of a defendant's verdict on a CUTPA claim against a medical service provider (opthalmologist), the Connecticut Appellate Court in Janusauskas v. Fichman, 68 Conn. App. 672,793 A.2d 1109 (2002), noted that CUTPA claims against health providers are limited to the entrepreneurial or business aspect of the provision of services, aside from medical competence. With respect to claims related to the entrepreneurial or business aspect of the provision of medical services, the court noted the following:
 Under CUTPA, an act or practice is deceptive if three conditions are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material — that is, likely to affect consumer decisions or conduct.
(Citations omitted; internal quotation marks omitted.) Id., 681.
The allegations contained in paragraphs 12 and 13 of the third, eighth and eleventh counts fail to contain such assertions. What we are left with is the recast of the health care provider malpractice claim claimed as a CUTPA violation. The allegations of negligent practices compounded by failure to implement appropriate procedures or regulations in the area of quality assurance would transform every malpractice case into a CUTPA claim. This court will not endorse this result. The third, eighth and eleventh counts are stricken.
 Conclusion
The motion to strike is granted with respect to the third, seventh, eighth and eleventh counts and their related prayers for relief contained in the amended complaint. The motion to strike the second, sixth and tenth counts complaint is denied.
 ___________________, J. ROBERT F. McWEENY
CT Page 15997